[No. 5767.  Decided January 9, 1906.]

## A. J. Druglis, *Respondent,* v. Northwestern Improvement Company *et al., Appellants.*[1]

Appeal—Review—Verdict Upon Conflicting Evidence. The verdict of a jury upon conflicting evidence upon an issue as to negligence is conclusive on the supreme court after the refusal of the lower court to grant a new trial.

Master and Servant—Negligence—Injury to Miner by Fall of Rock—Furnishing Props—Evidence—Sufficiency. In an action for personal injuries sustained by a miner from the alleged fall of rock in a mine, the question of the negligence of the defendant is for the jury, where there was evidence that no props were furnished to the plaintiff, as required by statute, although he had demanded the same; and the defendant is not entitled to a nonsuit by reason of conflicting testimony to the effect that there were sufficient props provided, and that the plaintiff had stated at the time that his injury was due to other causes.

Same—Violation of Statutory Duty—Assumption of Risk. An employee in a mine does not assume the risks of injury by reason of defendant's failure to perform the statutory duty of furnishing sufficient props.

Same—Contributory Negligence—Instructions. An instruction in a personal injury case to the effect that the defendant would be liable for an injury caused by its negligence, if the plaintiff was "without any greater want of care, prudence and skill . . . than was reasonably to be expected from a person of ordinary care," etc., is not prejudicially erroneous, although not as clear as it should have been upon the subject of contributory negligence.

Appeal from a judgment of the superior court for Pierce county, Rice, J., entered September 22, 1904, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by a miner through the falling of overhanging rock in a mine. Affirmed.

*B. S. Grosscup* and *A. G. Avery,* for appellants.

*Govnor Teats, Frank B. Sayre,* and *Otis W. Brinker,* for respondent.

[1]Reported in 83 Pac. 101.

MOUNT, C. J.—Action for injuries. Plaintiff recovered a judgment for $1,000 in the court below. Defendant appeals.

Plaintiff was employed as an experienced miner to mine coal in defendants' coal mine near Roslyn, Washington. The vein of coal where plaintiff was employed was about four feet ten inches, in thickness. Next above this vein of coal was a sandstone formation, about twelve inches thick, lying flat upon the vein of coal. A seam separated this sandstone from the coal on the lower side, and a seam likewise separated the sandstone from the hard country rock on the upper side. Above this sandstone formation was continuous hard, solid rock. The method pursued in mining was to break down the coal in the face of the working by means of blasts. When the coal was broken down, the sandstone cap rock remained in its place. The miner then examined the sandstone cap rock above by means of a bar or pick, to see that it was safe. An experienced miner could tell by tapping the cap rock whether it was safe or not. If it was not safe, he put props under it, and then shoveled back the coal which was broken down by the blast. If it was safe, he did not use the props. Generally, however, the props were used, and after the coal was shoveled back toward or into a car, which was furnished for the purpose of being loaded with coal, the props were removed, and the miner proceeded to break down the cap rock, which was thereupon piled up at one side of the "room" where he worked.

This cap rock was usually broken down by driving an iron wedge into the seam between it and the solid rock above. Sometimes it could be pried down with a bar without the use of the wedge. When it could not be broken down in either of these ways, it was broken down by a blast of black powder. It was always necessary, and was a part of the miner's duty, to take down and carefully pile away this cap rock, which was done immediately after the coal was shoveled from under it. The props which were used to hold up the projecting cap

rock while the loose coal broken down from the face of the vein was being removed, were furnished to the miners by car drivers upon request of the miners. On the 17th day of June, 1903, while the plaintiff was at work in the mine, a piece of cap rock fell upon, or rolled against, his right leg, and broke it. Thereafter he brought this action, alleging negligence of the defendants in two particulars; first, in providing for the excavation of a room of unsafe size; and second, in failing to provide timbers to enable plaintiff to safely prop his working place, as required by statute. The answer denied the allegations of negligence, and pleaded affirmatively contributory negligence and assumed risk.

The first charge of negligence was abandoned at the trial. The evidence as to how the accident happened and as to whether or not there were props furnished to the plaintiff, and whether or not plaintiff requested props from the drivers, or defendant Forsythe, is in irreconcilable conflict. The plaintiff's evidence was to the effect, that he was injured while shoveling coal; that no props were furnished him; and that he had demanded props from both the driver and defendant Forsythe, whose duty it was to furnish the props to the drivers to be delivered to the miners. The defendants' evidence was to the effect that, at the time of the injury, plaintiff told a number of witnesses that he was injured while wedging down the cap rock. These witnesses also testified that the coal was all cleaned out from under the cap rock, and that the wedge mark was plainly visible where the cap rock had been broken down. Defendants' evidence also tended to show that there were an abundance of props at hand for plaintiff's use, and that he had made no demand for props. The jury returned a verdict in favor of the plaintiff.

Appellants contend that the court erred in refusing to direct a verdict in favor of each of the appellants. As stated above, the evidence was in direct conflict upon each of the vital points in the case. It was, therefore, under repeated

rulings of this court, for the jury to determine the facts. The jury did so, and found in favor of plaintiff. The judge who saw and heard the witnesses refused to grant a new trial. The facts must therefore stand as found by the jury in favor of the plaintiff.

A large part of appellants' brief is devoted to the question of assumption of risk, and we are urged to overrule the case of *Green v. Western American Co.,* 30 Wash. 87, 70 Pac. 310. The appellants' brief in this case was filed before the decision in *Hall v. West & Slade Mill Co.,* 39 Wash. 447, 81 Pac. 915, and was considered by us in that case, because of the able argument it contained upon the question then at issue. But we then concluded not to change the rule laid down in *Green v. Western American Co.,* and since that time we have recently decided two other cases following the rule of *Green v. Western American Co.* and of *Hall v. West & Slade Mill Co., supra.* Those cases are *Whelan v. Washington Lumber Co., ante* p. 153, 83 Pac. 98, and *Hoveland v. Hall Bros. Marine R. etc. Co., ante* p. 164, 82 Pac. 1090. The rule has therefore become the settled rule of decision upon the question of assumption of risk in this class of cases.

Appellants assign several errors upon the instructions, besides those relating to the assumption of risk. These assignments are technical in their nature and we think are without sufficient substance to constitute reversible error. Some of the criticisms upon the language used by the court are probably justified; but, taken as a whole, the jury could not have been misled by the instructions. For example, the following instruction was given:

"You are instructed that, in determining the question of negligence in this case, you should take into consideration the conduct and situation of both parties at the time of the alleged injury as disclosed by the evidence, and if you believe from the evidence that the injury complained of was caused by the negligence of defendants as charged in the complaint,

26—41 WASH.

and without any greater want of care, prudence, and skill on the part of the plaintiff than was reasonably to be expected from a person of ordinary care, prudence, and skill in the situation in which he found himself placed, then the palintiff will be entitled to recover."

It is claimed that this instruction means that the plaintiff may have been guilty of some negligence and yet recover. We think the instruction is not susceptible of that construction. The court evidently meant to tell the jury that, if they believed the plaintiff was using ordinary care, prudence, etc., or, in other words, that the plaintiff himself was not negli-- gent, then he could recover. The words used to express that idea did not do so as clearly as they might have done, but the meaning is manifest, and we think did not constitute reversible error. Without considering each one of the instructions separately, we think it is sufficient to say that, taken together as a whole, they fairly gave the law of the case to the jury, and that there is no reversible error therein.

After a careful reading of the evidence, we are not impressed with the merits of plaintiff's case, but, since the jury found the material facts in favor of the plaintiff, after seeing and hearing the witnesses, whose testimony was conflicting, and since the trial judge refused to grant a new trial, and also since we find no reversible error of law in the record, the judgment must be affirmed.

DUNBAR, HADLEY, and FULLERTON, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., concur, on the authority of *Hall v. West & Slade Mill Co., supra.*