[No. 8435.  Department One.  February 24, 1910.]

BANAGETAS ANUSTASAKAS *et al.*, *Respondents*, v.
INTERNATIONAL CONTRACT COMPANY,
*Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—SAFE PLACE—EXCAVATIONS—
QUESTION FOR JURY. The negligence of an employer resulting in the
death of an employee from the caving in of a trench, is for the jury,
where he was directed to work in the trench seven or eight feet
deep, the sides of which were not braced as was usual and customary,
and that a fellow servant directed the foreman's attention to a crack
in the wall opposite the servant's working place a few minutes before
the accident, and the foreman did not warn the servant or take any
steps to protect him.

MASTER AND SERVANT—ASSUMPTION OF RISKS—EXCAVATIONS—UN-
KNOWN DANGERS. It cannot be said that a laborer in a trench seven
or eight feet deep assumes the risk of a cave-in of unbraced walls,
as a matter of law, where the master's evidence was directed to
proving that it was not customary to brace the walls in excavations
in soil of that character, and the master had directed the servant
where to work, and impliedly assured the safety of the place.

MASTER AND SERVANT—NEGLIGENCE—OBEYING DIRECTIONS. A direc-
tion to a laborer to work in a certain place in a trench, impliedly
assures its safety, and directs him to "stay" until the work is com-
pleted.

MASTER AND SERVANT — SCOPE OF EMPLOYMENT — INSTRUCTIONS.
Upon an issue as to whether a laborer in a trench unnecessarily
stayed therein after completion of the work, an instruction that
there could be no recovery if he stayed an unreasonable length of
time after completion of the work, is as favorable to the defendant
as the facts would warrant.

MASTER AND SERVANT—NEGLIGENCE—DUTY TO WARN—ISSUES—IN-
STRUCTIONS. Where a complaint charges negligence in directing a
laborer to work in a trench, with knowledge that the walls were
unsafe, an instruction relative to the duty of the master to give
warning upon receiving notice of the unsafety of the walls is not
objectionable as not being in harmony with the complaint.

WITNESSES—CROSS-EXAMINATION. It is not error to ask a witness
upon cross-examination if he had been paid for his testimony, there
being no attempt to show a settlement for liability to him arising
out of the matter in suit.

[1]Reported in 107 Pac. 342.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 22, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages for wrongful death.    Affirmed.

*Roberts, Battle, Hulbert & Tennant,* for appellant.
*Brady & Rummens,* for respondents.

Gose, J.—This is an action brought by the widow and the minor children of G. K. Anustasakas, deceased, against the appellant, for damages for personal injuries to the deceased causing his death, occurring, it is alleged, through the negligence of the appellant.    The minors have appeared by a guardian *ad litem.*    There was a verdict and judgment for the plaintiffs, and the defendant has appealed.

At the close of all the testimony in the case, the appellant challenged the sufficiency of the evidence and asked for a judgment in its favor upon three grounds:    (1) that its negligence had not been shown;  (2) that the deceased assumed the risk;  and (3) that his death was caused by his own negligence.    The application was denied.

The negligence relied upon for a recovery is alleged in paragraphs 4 and 5 of the complaint as follows:

"(4)   That at a date prior to the 11th day of April, 1907, the deceased, G. K. Anustasakas was employed by the defendant as a laborer and on the 11th day of April, 1907, the said deceased G. K. Anustasakas was laboring under the orders and directions of the defendant and its foreman in an excavation at Third avenue and Madison street in the city of Seattle; that the said G. K. Anustasakas was ordered into the said excavation to labor and he trusted the defendant and its foreman to see that the same was kept safe and in proper condition; that the defendant failed to provide the said deceased G. K. Anustasakas with a safe place in which to work; that the defendant carelessly and negligently failed to provide any material for propping up and bracing the walls of the said excavation, and carelessly and negligently failed to properly brace and protect the said walls of the said excava-

tion and the said defendant and its foreman negligently and carelessly ordered the said G. K. Anustasakas to stay in the said excavation and labor, assuring him that the same was safe after one of said laborers had notified the foreman of the defendant in charge of the work that the said walls were unsafe and the walls should be protected to prevent the same from caving in.

"(5) That by reason of the carelessness and negligence of the defendant in failing to provide the proper material for bracing the said walls, and by reason of the negligence and carelessness of the defendant in failing to properly brace and protect the walls of the excavation, and by reason of the carelessness and negligence of the defendant in ordering and keeping the said deceased G. K. Anustasakas and his fellow laborers in the said excavation after the defendant was notified that it was unsafe, the said walls caved in and the said G. K. Anustasakas was covered by the earth and buried and crushed thereby and by reason of the said injuries so received died a few hours later."

The deceased was injured by the caving of the walls of a trench in which he was working, and death resulted in a few hours. The appellant was engaged at the time of the accident in laying a water main in the city of Seattle. The trench had been dug some ten days or two weeks before the accident occurred. The excavation where the deceased was injured was about three feet in width and seven or eight feet in depth. A few minutes before the injury, the foreman of the appellant directed the deceased to abandon the work he was doing and go into the trench and dig some "bell" holes, that is, holes under the pipe joints so that the joiner could connect the pipe. While in the trench, and from five to fifteen minutes after he had finished, the wall caved and a mass or block of earth struck the deceased with such force as to cause his death.

There are numerous assignments of error, and the discussion in the briefs has taken a wide range, but the material facts developed upon the trial made the issue a simple one. The respondents' testimony tends to show that it is usual and

customary to brace the walls of excavations of the depth of
the one where the deceased was injured; that they were not
braced, and that no material was furnished with which to
brace them; that a few minutes before the accident a fellow
servant of the deceased directed the attention of the appel-
lant's foreman to a crack in the ground near the wall of the
trench and opposite the place where the deceased was work-
ing; and that the foreman neither warned the deceased nor
took any steps to protect him. The appellant met this state
of facts with testimony tending to show that no such custom
obtained; that the soil at the place of the injury was hard
blue clay or hard pan, containing gravel; that the caving
could not have been reasonably anticipated; and that the at-
tention of the foreman was not directed to the crack. This
made a simple issue which the jury resolved against the ap-
pellant, and the court properly denied its motion for a judg-
ment.

It is, however, asserted that the deceased was an experi-
enced man in that kind of work; that he assumed the risk
arising from the master's failure to brace the walls; and that
that issue should not have been submitted to the jury. This
contention cannot be sustained. The question of the assump-
tion of risk was one of mixed law and fact. It is true that
the fact that the wall was not braced was open and apparent.
The whole scope of the appellant's evidence, however, was
directed to proving that it was not customary to brace the
walls of excavations of this character, and that the nature of
the soil was such that no one would have apprehended danger.
The appellant directed the deceased where to work, and the
direction carried with it an implied assurance that the place
was safe. The deceased had a right to rely upon this assur-
ance unless the dangers were open or apparent, or the char-
acter of the work was such that a reasonably prudent man
would have apprehended danger. The point was ruled
against the appellant in the former appeal, *Anustasakas v.*

*International Contract Co.*, 51 Wash. 119, 98 Pac. 93, 21 L. R. A. (N. S.) 267, where we said:

"We deem it unnecessary to discuss the facts further than to say that under the testimony the questions of negligence, contributory negligence, and assumption of risk, were so clearly for the jury that we are constrained to believe that the nonsuit must have been granted on other grounds."

That the question as to whether the deceased assumed the risk was one to be determined by the jury is supported by the following cases: *Johnson v. Collier*, 54 Wash. 478, 103 Pac. 818; *Hilgar v. Walla Walla*, 50 Wash. 470, 97 Pac. 498, 19 L. R. A. (N. S.) 367; *Howland v. Standard Milling & Logging Co.*, 50 Wash. 34, 96 Pac. 686; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191. The facts, in our opinion, are so clearly within the rules announced in the cases we have cited that it is unnecessary to inquire what the rule is in other jurisdictions.

The point is made that there is no evidence to support the averment that the foreman ordered the deceased to stay in the excavation, assuring him that the place was safe, after the former had notice that it was unsafe. As we have seen, there is evidence that the foreman directed the deceased to work at the place where he received the injury. The direction had the force of an order, and it contained an implied assurance that the place was safe. The direction carried with it the duty on the part of the deceased to "stay" until the work was completed. There was no variance in this respect between the allegations and the respondents' proof.

It is contended that the deceased remained in the trench a few minutes after the joiner had said to him that his work was completed, and that when his work in the trench had been finished the obligation of the master was at an end. The court instructed the jury that, if the deceased remained in the trench an unreasonable length of time after he had completed the work he was directed to do, the duty of the master to keep the place in a reasonably safe condition ceased, and

there could be no recovery. We think the instruction was as favorable to the appellant as the law would warrant. The fact was one for the jury to determine.

The court instructed:

"If any circumstance arises during the progress of the work which imperils the safety of the servant, and such circumstance becomes known to the master, or its foreman, and is unknown to its servant, it would be the duty of the master to immediately warn the servant of such danger, in order that the servant might protect himself. And in this case, if you find from the evidence that this place became dangerous and the danger became evident to the foreman in charge of the work, or his attention was called to it as the presence of the crack in the earth along the excavation in which the deceased was working, and the defendant or its foreman failed to warn the deceased of such dangerous condition, then the defendant company would be guilty of negligence in that particular, and if the deceased was injured as a result of the failure of the foreman to warn him of the impending danger, the plaintiffs in this case would be entitled to a verdict; unless you find from the other instructions which I give you that he is not entitled to a verdict."

The appellant excepts to this instruction, on the ground that it is not in harmony with the negligence charged in the complaint. The complaint does not in direct terms allege that the foreman knew there was a crack in the earth near the wall of the trench, but a cursory reading of the paragraphs quoted will disclose that the complaint alleges that the foreman, with knowledge that the walls were unsafe, directed the deceased to continue at his work. The difference is one of form rather than meaning or substance.

Numerous errors are assigned in the refusal of the court to give instructions requested by the appellant. The instructions requested were either statements of negative propositions, or renewals of the grounds stated in the challenge to the evidence.

Upon the question of negligence the court instructed, in substance, that the respondents must recover, if at all, upon

the acts of negligence charged in paragraphs 4 and 5 of the complaint; that negligence consists in the failure to use reasonable care; that the standard of reasonable care is the conduct of the average, prudent man; that the master must furnish a reasonably safe place for the servant to work in; that the master is not negligent when he performs the work in the same manner and uses the same appliances as reasonably prudent men engaged in like work use and apply; that if it is customary for reasonably prudent persons engaged in the same kind of work under similar circumstances to furnish material for bracing the walls in excavations of like character to that described in the complaint, and the appellant failed to do so, it was negligent in that particular; that if it was not customary so to do, the appellant was not negligent in that respect; that negligence is never presumed, but that it is incumbent upon the party charging another with negligence to prove it by the testimony in the case. On the question of contributory negligence, the court instructed that the appellant has charged that the deceased was negligent and that his negligence materially contributed to his death; that this, if established, is a complete defense to the action; that the law imposes upon the servant the duty of exercising reasonable care for his own protection; that if he fails to exercise that degree of care and his failure so to do materially contributes to his death, there could be no recovery; that reasonable care means that degree of care usually exercised by a reasonably prudent person similarly situated. On the question of assumed risk the court instructed that the deceased assumed all the open, apparent, and obvious risks incident to the work he was doing, and that if his death resulted from such risks there could be no recovery. The instructions were brief, to the point, and in our opinion correctly announced the law of the case.

There was no error in asking the witness upon cross-examination whether he had been paid for his testimony. If counsel had sought to show that the witness had been injured in the

trench with the deceased, and the appellant had settled with him for the injury, a serious question would be presented.

The judgment will be affirmed.

RUDKIN, C. J., CHADWICK, FULLERTON, and MORRIS, JJ., concur.