[No. 9810.   Department Two.   December 2, 1911.]

LOUIS KNUDSEN, *Appellant*, v. MOE BROTHERS, INCORPORATED, *Respondent*.[1]

MASTER AND SERVANT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—OBEDIENCE TO ORDERS—EVIDENCE—QUESTION FOR JURY. In an action for personal injuries sustained by a loader of logs through the fall of a log from the load, the negligence of the master and contributory negligence are for the jury, where it appears that plaintiff loaded a car to its capacity, but the foreman ordered another log put on, to which the plaintiff at first objected because it would not stay on, but finally deferred to the foreman's judgment, putting on another log in the presence of the foreman, which afterwards fell off and struck the plaintiff while he was setting a brake in the discharge of his duties.

Appeal from a judgment of the superior court for Kitsap county, Yakey, J., entered March 17, 1911, in favor of the defendant, dismissing an action for personal injuries sustained through the fall of a log from a car, after a trial before the court and a jury.   Reversed.

*Martin J. Lund*, for appellant.

*Peterson & Macbride*, for respondent.

CROW, J.—Action by Louis Knudsen against Moe Brothers, Incorporated, a corporation, to recover damages for personal injuries.   At the close of plaintiff's evidence, the defendant's challenge to its sufficiency was sustained, and the action was dismissed.   The plaintiff has appealed.

[1]Reported in 119 Pac. 27.

The only question presented is whether the trial judge erred in sustaining respondent's challenge and dismissing the action.    From the evidence the following facts appear: Respondent corporation is the owner of a logging camp, in Kitsap county, together with a railroad, logging trucks, and machinery which it uses in conducting a logging business. Appellant was employed as a member of respondent's loading crew.    On March 25, 1909, with the assistance of other employees, he loaded one set of trucks, by placing three logs, two large and one small, in the first or lower tier, the small log in the center, and by also placing one large log in the second or upper tier.    Appellant regarded the car as then completely and safely loaded.

While the employees were waiting for a locomotive to remove the trucks, one Chris Moe, respondent's foreman, ordered appellant to place another log on the load.    To this order appellant objected, contending an additional log might not remain when the trucks were moved.    The foreman repeated the order, insisting there was plenty of room. . Thereupon appellant, deferring to his superior judgment, with the assistance of other employees and in the presence of the foreman, placed another log on the car as securely as possible. After this had been done, the locomotive arrived and, with the loaded trucks, proceeded to the main track where the truck was to be left on a slight grade.    To hold it on the grade, it was necessary to set the brake by means of a brake wheel, located at one side of the truck.    It was appellant's duty to set the brake.    While he was thus engaged, the last log which had been loaded, fell from the truck and injured him.    Appellant in part testified as follows:

"Q. Tell the jury in your own way how it happened.   A. I was there as a loader and I had the load finished in my own judgment; I thought it was a load, and I was there standing waiting for the loco.   Q. You mean the locomotive?   A. Yes; I was waiting for it to come up and take the load away, and while I was standing there waiting Mr. Chris Moe came up and told me I had room for another log on the load, and I

told him I did not think any more would stay on, and he said 'Yes; put another one on and it will stay,' and so I thought he knew better than I did, and that I had better put it on because he knew more than I did, had more experience, and I put it on, and I tried to get the crew to bring me the smallest log they could find, and they brought me a broken cedar log that was split, a flat one, and I put it on. . . . Q. And while you were doing the work, where was Mr. Chris Moe? A. He was there standing by the landing, and the locomotive came up and hitched onto the load, and I went on the locomotive and Chris Moe and Andrew Moe were on the locomotive, too, and I rode down to the switch, and when we came down to the switch I turned the switch and shoved it on the main line, and there was an empty truck between the load and the locomotive, and I went between that empty truck and the load till it was ready to stop, and I went and set the brakes, and as I grabbed the brake the log came off and struck me. . . . Q. Whose duty was it at that time to set the brakes? A. It was mine. There was nobody else there to set them. Q. What, if anything, was said to you about setting the brakes? A. Andrew Moe told me to set the brake. Q. And what was the nature of the track as to whether it was level? A. It was a little lower, so that it could not stay unless the brake was set; there was a little hill there."

The appellant thus yielded his judgment to that of the foreman, and obeyed his instructions, thinking he had the most experience and knew best. The evidence shows appellant thought the car was sufficiently and safely loaded; that the order of the foreman was then given; that in obedience thereto appellant placed another log in the manner he thought best; that he then believed it would remain, but that it fell and injured him. The questions presented are: Whether respondent's foreman was negligent in ordering appellant to place another log on the trucks; whether the resulting danger was so imminent and certain that a reasonably prudent man in the exercise of caution would not increase the load; and whether appellant was negligent in obeying the order. Under the evidence these questions were for the jury, notwithstanding the facts that the additional log was loaded

by appellant and another employee without assistance or
further instruction from the foreman, and that the appellant
thought it would remain.   Appellant abandoned his former
opinion, the result of his own judgment, in deference to the
experience and knowledge of the foreman, who was his su-
perior and authorized to employ and discharge the men.   As
an employee, it was appellant's duty to obey the foreman's
orders, unless they were so manifestly dangerous that a pru-
dent man in the exercise of due caution would refuse to obey.
A servant's obedience to the master's orders is an absolute
necessity to the successful conduct of any industrial occupa-
tion.   His refusal might deprive him of employment and
means of livelihood.   Ordinarily a servant yields his judg-
ment to the superior judgment and discretion of the master.
If he does, and is injured by reason of his obedience to the
master's orders, it will ordinarily become a question for de-
termination by the jury, in such an action as this, whether the
danger of obeying the order was so imminent and hazardous
as to charge the servant with contributory negligence and
preclude him from recovering damages.

In *Van Duzen Gas & Gasoline Engine Co. v. Schelies*, 61
Ohio St. 298, 310, 53 N. E. 998, the court well said:

"There is much reason in the rule that allows a favorable
construction to be placed on the act of the servant done in
obedience to the orders of his superior, though involving
danger.   Obedience to orders given by a master becomes a
habit with the servant.   He obeys without much questioning
the prudence of the order.   It is expected that he will do so,
and without such obedience the business of the master could
not be successfully conducted.   It is then both reasonable
and proper that the master should be held to a reasonable re-
sponsibility for what he orders his servants to do; and the
conduct of a servant in obeying an order, under such circum-
stances, should not be too closely criticized by courts in ad-
ministering the law.   Whilst the law will not excuse the
servant, where the thing ordered is plainly and manifestly
perilous, it will do so where a man of ordinary prudence and
care would, under the circumstances, have obeyed the order,

although involving danger. A servant has the right, and is expected, to rely somewhat on the superior knowledge and skill of one placed in authority over him."

In *Withiam v. Tenino Stone Quarries*, 48 Wash. 127, 92 Pac. 900, an action for personal injuries, the plaintiff was on an upright scaffold held by braces. A portion of the braces had been removed. The foreman ordered plaintiff to remove another brace, which he did. Plaintiff then attempted to leave the scaffold by passing through a window, when the scaffold fell and threw him to the ground. The foreman's order was the negligence charged. The plaintiff recovered damages, and the only question presented on the appeal was whether the danger was so apparent and imminent that a man of ordinary prudence and intelligence would have refused to obey the foreman's order. Upon this question, after citing numerous authorities, we said:

"The master of course is not now estopped to claim that the act of the servant was foolhardy and reckless, but, in view of his previous command, such a defense should be viewed with some suspicion and scrutinized with care. It is reasonable to assume that neither the appellant nor the foreman deemed the act overhazardous at the time, and evidently the jury did not so consider it. It seems to us that reasonable minds might well differ as to the danger that might result from the act which the appellant was directed to perform, and in such cases the jury's verdict is conclusive on the court, in so far as its right to direct a judgment is concerned."

The language quoted is especially pertinent to the facts now before us. From the evidence we cannot say, in view of the order of the foreman, that appellant was so foolhardy and reckless in loading another log that he must be held guilty of contributory negligence as a matter of law; nor can we say the respondent was not guilty of the negligence charged against it. These questions were issues of fact for the jury.

The judgment is reversed, and the cause remanded for a new trial.

DUNBAR, C. J., ELLIS, and MORRIS, JJ., concur.