[No. 10747. Department One. June 10, 1913.]

## JOHN ALBERT OLSON, *Appellant*, v. G. A. CARLSON *et al.*, *Respondents.*[1]

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—UNSAFE METHOD OF WORK—QUESTION FOR JURY. Whether a foreman in railway construction work adopted a safe method of loading a heavy timber, weighing 800 to 1,400 pounds, on a dump car, is a question for the jury, where attempt was made to lift it up one end at a time, and it appears that four men were detailed to hold one end, seven feet above the ground on which they were standing, while other men attempted to swing around and lift up the other end, and that the timber was slippery from snow or ice upon it, and fell when the men were unable to lift the last end high enough to put it on the car.

SAME—ASSUMPTION OF RISK. In such a case, whether plaintiff assumed the risk or was guilty of contributory negligence, are questions for the jury, where he acted in pursuance of the specific directions of the foreman.

SAME—FELLOW SERVANT'S NEGLIGENCE—QUESTION FOR JURY. In such a case, whether the negligence of fellow servants, assisting the plaintiff to hold one end of the timber on the car, in running away and letting the timber fall, was the cause of the injury, is a question for the jury, where there was evidence that they were unable to hold up the end.

[1]Reported in 132 Pac. 721.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered April 15, 1912, upon sustaining a challenge to the sufficiency of the evidence, dismissing an action for personal injuries sustained by a common laborer in railroad construction work. Reversed.

*Robertson & Miller*, for appellant.

*Cannon, Ferris & Swan* and *John B. White*, for respondents.

PARKER, J.—The plaintiff commenced this action seeking recovery of damages for personal injuries which he alleges resulted to him from the negligence of the defendants while in their employ as a common laborer. At the close of the evidence introduced in behalf of the plaintiff, counsel for the defendants moved for a dismissal upon the ground of the insufficiency of the evidence to sustain any verdict against them. This motion being denied by the court, evidence was introduced in behalf of the defendants, and at the close of all the evidence, counsel for the defendants again challenged the sufficiency of the evidence to sustain any verdict against them, and moved the court to withdraw the case from the jury and render judgment in their favor. The court sustained this challenge to the sufficiency of the evidence, and rendered its judgment accordingly. From this disposition of the cause, the plaintiff has appealed.

At the time appellant was injured, he was employed as a common laborer by respondents, who were then contractors engaged in railway construction work for the Chicago, Milwaukee & Puget Sound Railway Company, near Rosalia, in Whitman county. Appellant was injured by a heavy timber falling upon him while he was assisting other employees, common laborers, in an attempt to load it upon a dump car. The timber was 10x18 inches in size, and 20 feet long, and weighed between 800 and 1,400 pounds, according to the varying estimates of the witnesses. The dump car was 5½ feet high above the rails on which it stood, and the top of it

was about 6½ to 7 feet above the ground on which the men
were required to stand by the side of the track while attempt-
ing to load the timber on the car.   There was a side-track
parallel with, and a short distance from, the track on which
the car stood.   The timber lay upon the ground on the oppo-
site side of this track, some twenty feet from the car.   Snow
was upon the ground at the time, and the timber had some
snow and possibly some ice adhering to it, rendering it slip-
pery.   The foreman directed the men to load the timber on
the car by hand.   There were no skids or other appliances
furnished or used in the attempt to load it.   The men first
lifted the timber and laid it on the ties of the side-track,
lengthwise to the car and the track.   Appellant testified as
follows:

"Q. Well, what did you do then?   A. These men came
out and foreman Lunden told us, 'Take up the timber and
load it on that car.'   He says, 'You take one end first, pick
up one end and put that on first.'   And we did as he directed
us to.   When we got one end up he told us to swing the other
end around, and some of us, about four of us, stood at that
end and held against the timber so it wouldn't slip off, while
the other men lifted up the other end and was going to swing
it on.   .   .   .   After we got one end up on the car, the
foreman, Lunden, told us, 'Some of you fellows step
here and hold it against this end so it won't fall off; you
fellows go to the other end and swing it around.'   Q. And
did they do that?   A. Yes, some of the men went over to the
other end.   Q. Then what happened?   A. They lifted it up,
lifted it up so they got it about level, and then swung it
around so easy, and when they got to the corner of the car,
got to the other end there, the foreman told them to give it a
turn, to swing that end over the corner, and when they was
going to give it a turn the other end slipped off.   Q. You
say there were four or five men on your end of it?   A. Yes
sir.   Q. And how many were on the other end when they
swung it around?   A. About six or seven.   .   .   .   Q.
Now, you have already stated that the foreman ordered
the other men to swing the other end up, and they did try
to swing it up.   Now, just tell the jury what happened,

either while they were attempting to swing the other end up, or just after they swung it up. A. When they was swinging, they carried it around until they got it about lengthwise with the car and they raised up as high as they could reach, in my opinion. Q. Could they get it up even? A. No, it was not even with the car; was not quite even; was slanting a little. And then when they got to the corner the foreman told them to cant it, to get it in over the corner. Q. What do you mean by canting; do you know? A. Turn the timber around. Q. Then what happened? A. They was going to cant it around and we couldn't hold the timber at our end, and the timber came right down on top of me."

This testimony of the appellant is, for the most part, corroborated by at least two other witnesses, who were present during the attempt to load the timber on the car, one of whom testified that when the timber slipped and fell the men "all got away except Olson," and that "they were forced to run away or else they would all have got hurt." The presence of the foreman, and his giving specific directions as to the manner of loading the timber, is a subject of conflict in the evidence, but we think there was ample evidence to warrant the jury in concluding that he was present and gave directions in substance as stated in the above quoted testimony. We find but little conflict in the evidence as to the manner in which the timber was attempted to be loaded, the cause of it falling, and the getting away from it by the men when it fell and injured Olson.

The principal act of negligence relied upon by counsel for appellant is that respondents adopted an unsafe method for the loading of the timber. They contend that the evidence was such as to call for the decision of the jury upon that question. We are constrained to agree with this contention. It seems to us that, in view of the weight of the timber, the height at which it was required to be raised to reach the top of the car, its slippery condition, the apparent difficulty of the men in controlling with their hands only the end of the timber upon the car, some seven feet from the

ground on which they were standing, while the other end was being carried around so as to become nearly parallel with the car with a view to raising that end on the car, there is ample room for difference of opinion among reasonable minds as to this being a safe method of loading the timber upon the car, and as to it being the proximate cause of appellant's injuries. This view finds support in *Ball v. Megrath*, 43 Wash. 107, 86 Pac. 382, and *Bonnett v. Galveston, H. & S. A. R. Co.*, 89 Tex. 72, 33 S. W. 334.

Some argument is made by counsel for respondents upon the theory that appellant assumed the risk. Whatever force there may be in this argument, it seems to us it is one to be addressed to the jury under proper instructions, and it cannot be decided as a matter of law, in view of the evidence relating to specific directions given by the foreman. It certainly cannot be said as a matter of law that appellant assumed the risk, or was in any degree contributorily negligent in assisting his fellow workmen in the manner he did in view of the foreman's direction and his own lack of experience in that kind of work. *Bailey v. Mukilteo Lumber Co.*, 44 Wash. 581, 87 Pac. 819; *Witham v. Tenino Stone Quarries*, 48 Wash. 127, 92 Pac. 900; *Anustasakas v. International Contract Co.*, 57 Wash. 453, 107 Pac. 342; *Nelson v. Ballard Lum. Co.*, 60 Wash. 690, 111 Pac. 882; *Knudsen v. Moe Brothers,* 66 Wash. 118, 119 Pac. 27.

It is contended by counsel for respondents that the evidence conclusively shows that whatever negligence resulted in appellant's injuries, other than that of his own, was the negligence of his fellow servants. This argument is rested upon the theory that the men who were assisting him to hold the upper end of the timber upon the car while the lower end was being carried around by the other men, negligently ran away and let it fall upon him. This also, we think, was a question for the jury, in the light of the evidence tending to show that the men were unable to hold that end upon the car while the other end was being carried around, and that they

got out of the way because of their inability to hold it, seeing it was about to fall. This question, we think, cannot be decided against appellant as a matter of law.

We are of the opinion that the learned trial court erred in declining to submit to the jury the question of respondents' negligence in adopting an unsafe method for loading the timber.

Some contention is made relative to the question of insufficiency of the number of men furnished by respondent for the loading of the timber. This question becomes immaterial to our disposition of the cause, in view of our conclusion upon the other question of negligence which we have noticed. We conclude that the judgment of the trial court must be reversed, and appellant granted a new trial.

It is so ordered.

CROW, C. J., CHADWICK, MOUNT, and GOSE, JJ., concur.