[No. 11967. Department One. August 10, 1914.]

HJALMER LINDQUIST, *by his Guardian etc., et al., Appellants,*

v. PACIFIC COAST COAL COMPANY, *Respondent.*[1]

TRIAL—PROVINCE OF COURT AND JURY—WEIGHT AND SUFFICIENCY
OF EVIDENCE. The fact that the testimony of a witness called by
plaintiff is not in entire harmony with his theory of the case does
not warrant the granting of a nonsuit, since it is the province of
the jury to weigh and harmonize it, if possible, or accept or reject
it, considering all the facts and circumstances of the case.

MASTER AND SERVANT—INJURY TO SERVANT—SAFE PLACE—CHANG-
ING CONDITIONS—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.
An employee in a mine is not guilty of contributory negligence nor
does he assume the risks from changing conditions therein, where,
upon discovering signs of a squeeze in the roof of the mine, he quit
working at that place, but upon assurance of the foreman that the
place was safe, resumed his work, and a few hours later the roof
fell, killing the employee.

SAME—FELLOW SERVANTS—FOREMAN AS VICE PRINCIPAL. In such
a case, the foreman, having authority to direct the work in the mine,
is a vice principal and not a fellow servant.

MASTER AND SERVANT—METHOD OF WORK—TIMBERING MINE—STAT-
UTES—CONSTRUCTION. The owner of a mine is not negligent in fail-
ing to provide for cribbing instead of supporting the roof with posts
and caps, or from the fact that the timbers furnished were placed
two hundred and fifty feet away from the working place, no con-
tention being made that sufficient timbers were not furnished in
compliance with Rem. & Bal. Code, § 7394, from which cribs could
have been made had the workmen been disposed to so use them, the
statute fixing the place of delivery "at the entrance to the working
place" and no objection being made that sufficient timber was not
in place, it further appearing that the method of timbering the mine
had been employed for twenty years, the plaintiffs' evidence going
no further than to indicate that, if cribbing had been used, the ac-
cident would not have happened.

SAME — METHOD OF WORK — COAL MINING — QUESTION FOR JURY.
Whether a coal miner, killed by the falling of the roof in a mine,
assumed the risk where the chute on one side of the section in
which he was working had caved in and was out of use, and
whether it was proper mining to remove the coal from one side of

[1]Reported in 142 Pac. 445.

the section to the other so as to leave no natural support for the roof, are questions for the jury, the measure of duty being defined by the statute, and not by the common law.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered January 31, 1914, upon granting a nonsuit, dismissing an action for the wrongful death of a coal miner, killed by a falling roof in a mine. Reversed.

*S. A. Keenan*, for appellants.

*Farrell, Kane & Stratton* and *Stanley J. Padden*, for respondent.

CHADWICK, J.—This action was brought by the infant sons of Matt Lindquist, to recover damages on account of the death of their father, which occurred in the coal mine of the defendant. The method of mining was to open chutes so as to divide the coal seam into pillars. These chutes were ten feet wide and were driven up the vein from the main gangway at right angles thereto and about thirty-five feet apart. These pillars were divided into rooms or sections by driving cross cuts four feet wide from chute to chute every sixty feet, each section being, therefore, thirty-five by sixty feet. Each chute was divided by timbers into two parts, the one being used as a chute for running the coal out of the mine and the other as a man way.

Lindquist and his partner were experienced miners, and had been working in the section where the accident occurred for some time. The chute on the right-hand side of the section had caved and was out of use, so that it was necessary to bring all of the coal out of the left-hand chute. The miners had, in consequence, began at one side of the section and were mining it over to the other side. It was the custom in that mine to timber with uprights or props, with caps to support the roof. On the afternoon before the accident occurred, Lindquist and his partner observed some evidences of a squeeze in the upper right-hand corner of the section.

They accordingly quit working at that point. The next morning, at about eight o'clock, the mine foreman, whose duty it was to inspect the work from time to time and to look after the safety of the men, came in and inspected the place that Lindquist and his partner had believed to be dangerous on the night before. It was the judgment of the foreman that the place was safe, and he accordingly ordered the miners to proceed and take out the coal. They did so, timbering as the work progressed toward the corner of the section. While thus engaged, at somewhere between half past twelve and two o'clock in the afternoon, the roof squeezed and Lindquist was killed.

The case is predicated upon several charges of negligence. It was brought to trial upon general denials and affirmative defenses charging contributory negligence and assumption of risk, and that the plaintiff's intestate and the foreman were fellow servants. When the plaintiffs had rested their case, the court entertained and allowed a motion for a nonsuit. From a judgment of dismissal, this appeal is prosecuted.

The court, in passing upon the motion for a nonsuit, was of opinion that the testimony of one of the witnesses called on behalf of the plaintiffs exonerated the defendant from all blame. We have read the testimony of the witness and, without reviewing it, we are satisfied that it will not bear the construction put upon it by the trial judge. Admitting that it is not in entire harmony with plaintiffs' theory of the case, it is, nevertheless, no more than the testimony of one witness. It was the province of the jury to weigh and harmonize it, if possible, or to accept it or reject it, as they saw fit, considering all the facts and circumstances of the case.

It is urged that, although the deceased would have been justified in following the judgment of the foreman, under the rule announced in *Beseloff v. Strandberg*, 62 Wash. 36, 113 Pac. 250; *Cox v. Wilkeson Coal & Coke Co.*, 61 Wash. 343, 112 Pac. 231; *Christiansen v. McLellan*, 74 Wash. 318, 133

Pac. 434; *Lamoon v. Smith Cement Brick Co.*, 74 Wash. 164, 132 Pac. 880; *Olson v. Carlson*, 74 Wash. 39, 132 Pac. 721; that, nevertheless, the lapse of time between eight o'clock and about two o'clock in the afternoon was such, and especially so when taking into consideration the constantly changing situation, that the case is exempted from that rule, and deceased must be held to have assumed the risk or was guilty of contributory negligence.

It is an undoubted rule that, where the place of work is being constantly changed as the work progresses, as in the construction of buildings and the like, a workman will be held to have assumed the risks incident to his labors; but this rule is not without a very important and reasonable exception. It often happens, in the prosecution of a particular piece or kind of work—as for instance, mining—that the safety of the place will become an object of inquiry calling for an expression of judgment. We have held repeatedly in such cases that a workman who follows the assurance and judgment of the master will not be charged with an assumption of risk or be held to be guilty of contributory negligence as a matter of law. The reason is obvious. It inheres in the very doubt that called for the original inquiry. The assurance is not that one blow may be struck or one shovel full of earth may be turned in safety, but that it is safe to remain in the questioned situation long enough to accomplish the thing to be done, which in this case was to remove the coal from that part of the pillar where the squeeze occurred. The foreman, and consequently the master, is charged with knowledge that it would take time, possibly hours of time, to do the things he said could be safely done. Now, when the workmen proceeded in the usual and customary way, propping the roof with posts and caps as they went, they should not be charged; for the assurance of the foreman implied that they should do the work safely in the way adopted in that particular mine. Certain Colorado cases are cited which hold a contrary rule. They are not in harmony with

our own decisions, in that a foreman exercising his judgment in the presence of the men and concurrent therewith is there held to be a fellow servant (*Poorman Silver Mines of Colorado v. Devling*, 34 Colo. 37, 81 Pac. 252); whereas, this court has consistently held that a foreman having authority to direct the work is a vice principal. It will not be decided, as a matter of law, that a workman who has followed the judgment of the master or his vice principal is guilty of contributory negligence, unless the situation was so manifestly dangerous that a man of ordinary prudence, in the exercise of due caution, would refuse to obey. *Knudsen v. Moe Brothers*, 66 Wash. 118, 119 Pac. 27; *Campbell v. Winslow Lumber Co.*, 66 Wash. 507, 119 Pac. 832; *Lamoon v. Smith Cement Brick Co.* and *Olson v. Carlson, supra.*

The next contention of the appellants is that defendant used an improper and dangerous method of mining, in that it did not provide for cribbing instead of posts and caps; and in that it did not keep the chutes open on both sides of the section being worked so that coal might be removed from each side of the section, or first from one side and then from the other. Whether it was the duty of the master to provide timber for cribbing under the circumstances developed by the testimony, may well be questioned. As we read the record, the mine of the defendant was not what is called an unsafe mine. The method employed, as testified to by witnesses who have been familiar with the mine for more than twenty years, is to support the roof with props or posts, with caps. The duty of a master is to meet those conditions which suggest danger to men of ordinary prudence and judgment. The testimony goes no further than to indicate that, if cribbing had been used, the accident would not have happened. Such testimony is always given in the light of what has occurred, and is of little value in determining whether, when considering the character of the ground being worked and the past history of the mine, the squeeze should have been anticipated and guarded against by crib-

bing instead of props. The law is that the owner shall keep a sufficient supply of timber where the same is required for use as props so that the workmen may be at all times able to properly secure the roof from caving in. Rem. & Bal. Code, § 7394 (P. C. 345 § 139). We think that defendant met this duty within the letter of the statute and *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310, and *Druglis v. Northwestern Imp. Co.*, 41 Wash. 398, 83 Pac. 101. It does not seem to be contended that defendant failed to supply enough timber to make cribs if the workmen had been disposed to use them, but that the timber was placed at such a distance from the working place that the miners could not erect them and make any money at the rate agreed upon between the miners' union and the defendant owner. The union must have fixed or agreed upon the schedule of compensation, having in mind the fact that the mine could be worked safely without taking time to crib the ceiling as the work progressed. Nor do we think that defendant should be held to be negligent in that the timbers furnished were placed at about two hundred and fifty feet away. The statute, § 7394, *supra*, provides that the timbers shall be delivered "at the entrance to the working place." What the entrance to the working place may be is to be explained by testimony in every case, but when explained it may become a question to be decided as a matter of law. The statute does not fix a distance but a place. Neither does it appear that the workmen, one of whom survives and was a witness, objected in any way because sufficient timber was not in a proper place. We are satisfied that defendant was not negligent in this regard.

Whether it was proper mining to remove the coal from one side of a section to the other so as to leave no natural support across the whole face of the roof, is, we think, a proper question for the jury. Neither would the fact that the chutes to the one side of the section had caved in bind the workmen to an assumption of risk or make them guilty of contributory negligence. At common law, they no doubt

would be so charged. The present measure of duty is that of the statute. Labor statutes are passed to cure the rigors of the common law rule. *Pachko v. Wilkeson Coal & Coke Co.*, 46 Wash. 422, 90 Pac. 436; *Green v. Western American Co., supra; Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915. The coal mine act is drawn with a sole purpose to insure safety in method and manner of mining, and courts cannot be less liberal in the interpretation of such statutes than the spirit of the law demands.

Whether the danger was so obvious that a man of ordinary prudence in the exercise of due caution would have refused to obey the direction of the foreman, and whether the manner of removing the coal from the section in the way in which it was removed was a negligent way, are issuable facts to be determined by a jury.

For the reasons assigned, the case is reversed and remanded with directions to take the verdict of a jury.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.