[No. 9524.   Department Two.   July 1, 1911.]

CHARLES SWANSON, *Appellant*, v. A. A. GORDON *et al.*, *Respondents.*[1]

MASTER AND SERVANT—FELLOW SERVANTS—ACT OF FOREMAN ASSISTING IN WORK.   The negligence of a working foreman of a gang of structural iron workers, engaged in raising a boom stick to the mast of a hoist derrick, is not imputable to the master, where they were all experienced men, the act was simple and there was no hidden danger, it was not customary to furnish an extra man to oversee the work, and the accident happened through the oversight of the foreman in pulling the stick a few inches higher than the proper place; since it was an omission of fellow service rather than lack of superintendence.

[1]Reported in 116 Pac. 470.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 10, 1910, upon granting a nonsuit, dismissing an action for personal injuries sustained by an employee engaged in constructing a building. Affirmed.

*Owens & Finck* and *Reynolds, Ballinger & Hutson*, for appellant.

*Roberts, Battle, Hulbert & Tennant*, for respondents.

CHADWICK, J.—Plaintiff and four others, all structural iron workers, were engaged in one gang on the Northern Bank building in the city of Seattle. One Norman was the gang foreman, and directed the work. He is called also a working foreman, or working boss, by some of the witnesses. He gave a hand when necessary. In the promotion of the work at hand, it became necessary to lash a mast onto a hoist derrick, so as to extend its sweep. The derrick was twenty feet eight inches high, and the straight legs were tied by two rungs and a top piece. The mast was a six-by-eight stick of timber, seventeen feet long. In order to put it in the proper place, it became necessary to lift it so that it might be lashed to the first or top rung of the derrick. Accordingly two blocks with necessary tackle were put in place, the top or fixed block so arranged as to make a draw of five or six feet. Norman, the working foreman, and another workman pulled the tackle until the blocks came together, and plaintiff, who was on the top of the derrick, and two other workmen, stationed on the first and second rungs, held the timber in place while the workman on the first rung kicked the lashings down so that a new hoist could be made. It was the intention of the parties to bring the bottom of the mast up to within three or four inches of the top rung, where it was to be securely lashed, so that it might be made to perform its function. The work had progressed until the end of the mast was within a foot of the top rung. Another hoist was made, and instead of stopping the mast so that the lower end was

about three inches below the top rung as was intended, Norman and the one who was helping him pulled the mast an inch or two above the top rung, when, being no longer supported by the rung and plaintiff being unable to hold it, the mast toppled over and carried the plaintiff, who was kneeling with his left knee on the cross-piece, his right leg hooked around one of the side pieces, his right hand holding on the derrick, and his left arm about the mast, off of his balance so that he fell to the floor, sustaining the injuries of which he now complains.

The work and the relations of the men may be best illustrated by reference to the record. One of the workmen says:

"Q. There was nothing at all complicated about this? A. No, sir; not at all; just as straight as you have it there. Q. Just a simple proposition? A. Yes, sir. Q. And there was nothing about it that you could not see or Swanson could not see as well as Mr. Norman could see it or Mr. Gordon or Mr. White, anybody would see it? A. Yes, sir; just as straight as you have it there before you, gentlemen. Q. Nothing concealed? A. No, sir. Q. Or complicated about it? A. Not a thing."

Norman, the foreman, who was a witness for plaintiff, says:

"Q. There was nothing in the process of elevating this stick but what was plain, could be seen by anybody? A. Just pulled it up. Q. Just pulled it up? A. Yes, sir. Q. And it was a simple thing to do, anybody could do it? A. Anybody could do it, but we did not do it; lots of things look simple but anybody cannot do it. Q. There was nothing about it that Mr. Swanson could not see just as well as you could see it? A. Yes, sir; he could see. Q. Nothing about it that he could not see just as well as Mr. Gordon could have seen it if he had been there? A. Yes, sir; they all could see it. Q. They all could see it? A. Yes, sir. Q. And you men were all of you iron workers? A. Yes, sir. Q. All members of the same order? A. Yes, sir. Q. And therefore, there was no disposition on your part to hurt anybody else, was there? A. No, sir. Q. So that this was really an accident that happened there among you, wasn't it? A. It was just

an oversight on my part in pulling it too high. Q. An oversight in pulling it too high on your part? A. Yes."

While the plaintiff testified:

"Q. Now, these five men were all experienced men, were they not? A. Yes, sir. Q. They were all experienced in this structural iron work? A. Yes, sir. Q. As a matter of fact, Mr. Swanson, it was a good gang, wasn't it? A. Yes, sir. Q. All good men? A. Yes, sir. Q. Now the work of arranging this derrick there was merely a preliminary to putting up the big derrick? A. Yes, sir. Q. This derrick which is called the breast derrick was simply being put up in order to install this boom derrick that you used to handle the steel? A. Yes, sir. Q. And the breast derrick was not used in handling the steel, was it? A. Well, while assisting after—Q. It might assist afterwards? A. Yes, sir. Q. But what you were doing at the time in putting up the boom derrick was a mere incident in the real work of putting up the steel, wasn't it? A. Yes, sir. . . . Q. Now, when you went up there, you selected your position on the derrick. A. Yes, sir."

At the close of plaintiff's case, a judgment of dismissal was entered by the trial judge, who entertained the opinion that there was no actionable negligence on the part of defendants.

The charge of negligence in this case is that the foreman, in directing the operation of the derrick and movements of the men, was negligent in that he allowed the mast to be pulled too far so that it toppled over. There is no allegation, nor is there any showing, of other negligence. On the other hand, it is shown by all of the witnesses, that the appliances were ample and sufficient and in good condition; that the men were competent and skillful workmen; that there was no negligence in the selection, or an insufficient number, of men; and that the foreman was in no way incompetent. The case is reduced to the single proposition, whether the oversight of a foreman, who was one of a gang and working with it, and who failed to stop pulling on a rope attached to the mast in time to prevent the accident, is imputable to the master.

Appellant puts his principal reliance upon the following cases: *Olson v. Erickson,* 53 Wash. 458, 102 Pac. 400; *O'Brien v. Page Lumber Co.,* 39 Wash. 537, 82 Pac. 114; *Tills v. Great Northern R. Co.,* 50 Wash. 536, 97 Pac. 737, 20 L. R. A. (N. S.) 434, and the cases cited in *Desjardins v. St. Paul & Tacoma Lumber Co.,* 54 Wash. 278, 102 Pac. 1034, a case to which we shall hereafter refer. It has never been held that, because two or more men are engaged in a like undertaking, the duty of superintendence follows as a legal obligation. To put the mere details of a work under the burden of independent superintendence would necessitate the employment of one man to oversee every other, no matter what the character of the work. It is generally held that the question of the right of superintendence is to be resolved by reference to the facts of the given case. *Engelking v. Spokane,* 59 Wash. 446, 110 Pac. 25, 29 L. R. A. (N. S.) 481.

We cannot presume that independent superintendence would have prevented the careless and negligent act of plaintiff's fellow workman; or as he himself styles it, his oversight. A mast may be pulled an inch too far, a pole tipped an inch out of balance, the wall of a ditch may be dug without sufficient batter by one workman, and another may be injured, and yet the master may have done all that could reasonably be required of him. So in this case, with five competent and experienced men, with every appliance necessary, and these in perfect order, with no showing that it was customary to furnish an extra man to oversee such work, with no hidden danger or defect, the work, considering the employment and skill of the workmen, not in itself dangerous, and a plaintiff who had himself been foreman on like jobs, knowing that the one whose carelessness is attributed to the master was a fellow workman with him, it would seem that the defendants had done their whole duty. The workmen were employed in a common service. The accident occurred because of an omission of fellow service, and not from lack of superintend-

ence.  Without reviewing the cases relied on, it will be seen by reference that each of them turned on the fact that the character of the work was such that general oversight by an independent agency could not be dispensed with without depriving the injured servant of a substantial right.  This case falls squarely within the case of *Desjardins v. St. Paul & Tacoma Lumber Co., supra,* where the court said:

"It was claimed by respondent at the trial, and is also claimed here, that Mr. Brandt was a vice principal, and that he was negligent in not warning respondent that the post was about to fall, and also negligent in placing the sling near the bottom of the post instead of near the top.  It is claimed by the appellant that the evidence shows Mr. Brandt was not a foreman and had no more authority over respondent than respondent had over Mr. Brandt, in other words, that Mr. Brandt and respondent were simply fellow servants working together, with no authority the one over the other.  We may assume, however, for the purposes of this case that Mr. Brandt was a foreman for the purpose of directing the work, and therefore had control of the respondent.  Still, the respondent's evidence makes it plain that the negligence which caused the injury was the negligence of a fellow servant in a mere detail of the work.  It is not claimed that the proper appliances were not furnished by the master.  Respondent states that: 'Brandt held the post and I thought he was going to hold it, and I did not suppose he would let it go. . . . I just happened to look up and see Brandt had let go of the post and had his hand here on the rope close to the tackle. . . . A ten-year-old boy could hold the post if he would not let go.'  In holding the post Mr. Brandt was performing a mere detail of the work.  He was not performing any nondelegable duty of the master.  If he was negligent in letting go of the post with his hands and attempting to hold it by the tackle, the negligence in that respect was clearly the negligence of a fellow servant for which the master was not responsible.  This case in this respect is controlled by the case of *Jock v. Columbia & Puget Sound R. Co.,* 53 Wash. 437, 102 Pac. 405.  The respondent relies upon the rule stated in *Nelson v. Willey S. S. & Nav. Co.,* 26 Wash. 548, 67 Pac. 237; *O'Brien v. Page Lumber Co.,* 39 Wash. 537, 82 Pac. 114; *Dossett v. St. Paul & Tacoma Lumber Co.,* 40

Wash. 276, 82 Pac. 273, and other cases holding that, where the master directs a dangerous agency into motion without warning, and injury results to the servant, the master is liable. That rule cannot apply to this case because, if Brandt represented the master, he directed no dangerous agency into action. He was holding a post with his hands. A ten-year-old boy could have held it. He took his hands from the post and attempted to hold it by means of a rope. The post fell without his volition, so far as the evidence shows. If that was negligence, it was his own negligence and not that of the master."

In that case the foreman removed his hands from the post which he was setting in an upright position, and it toppled over and fell. In this case the foreman pulled the mast a few inches beyond its proper place, and it toppled over, carrying the appellant with it. It was clearly an omission of fellow service, and plaintiff cannot recover. *Cavelin v. Stone & Webster Eng. Corp.*, 61 Wash. 375, 112 Pac. 349; *Mercer v. Lloyd Transfer Co.*, 59 Wash. 560, 110 Pac. 389.

Judgment affirmed.

MORRIS, CROW, MOUNT, and ELLIS, JJ., concur.