[No. 11077. Department Two. July 14, 1913.]

OLIVER CHRISTIANSEN, *by his Guardian etc., Respondent* v. F. McLELLAN, *Appellant.*[1]

MASTER AND SERVANT—INJURY TO SERVANT—EXISTENCE OF RELATION. The relation of master and servant existed between the plaintiff and defendant, where the owner of a team hired the plaintiff to drive the team and then let the team, wagon, and driver to defendant in street grading work, the plaintiff being under the direction and control of the defendant.

SAME—SAFE PLACE TO WORK—CHANGING CONDITIONS—ASSUMPTION OF RISKS. An employee driving a team on a street fill does not assume the risks from the ever changing conditions, and the master owes the duty to furnish a safe place, where he was present and personally directed the work and plaintiff was injured while driving down an unsafe place at the specific direction of the master.

SAME—ASSUMPTION OF RISKS—QUESTION FOR JURY. Whether the driver of a team assumed the risk in obeying the specific order of the master to drive down a steep embankment is for the jury, unless the danger was so plain and apparent that there could be no two opinions concerning it.

EVIDENCE—OPINION EVIDENCE—EXPERTS. The opinions of experts are admissible as to whether it would be safe to drive a team and wagon loaded with earth down a steep embankment in street grading work, if the place was such as to require a person of special experience and knowledge to determine it.

EVIDENCE—RELEVANCY—REMOTENESS. In an action for personal injuries sustained in street grade work, evidence as to the grade of the slope at the time of the trial is admissible where by comparison it enabled the jury to determine the grade at the time of the accident.

[1]Reported in 133 Pac. 434.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered October 23, 1912, upon the verdict of a jury rendered in favor of the plaintiff, for injuries sustained by an employee driving a team in street improvement work. Affirmed.

*John W. Roberts* and *George L. Spirk,* for appellant.
*Arctander, Halls & Jacobsen,* for respondent.

FULLERTON, J.—In the year 1911, the appellant, McLellan, had a contract with the city of Seattle to grade and otherwise improve parts of certain streets therein, included in which were parts of Battery and Elliott streets. Elliott street had been filled up to grade where it crossed Battery street, leaving an abrupt embankment of a considerable height between the surface of the streets. The improvement required the filling of Battery street at this point, and work was commenced thereon by hauling and dumping earth on the edge of the embankment on Elliott street and shoveling it from there into the street to be filled. After the fill reached a certain height, the foreman directed the teamsters hauling the dirt to drive over the embankment onto the fill and dump the loads as they passed down the same. The respondent was driving one such wagon, and on driving onto the dump with a load of earth, his wagon overturned, falling upon him and severely injuring him. He brought the present action to recover for the injuries suffered. At the trial, the jury returned a verdict in his favor for $1,500. From the judgment entered thereon this appeal is taken.

The appellant first contends that the relation of master and servant did not exist between himself and the respondent, and hence the respondent cannot predicate a right of recovery against him on the liabilities growing out of that relation. The contention that the respondent was not the appellant's servant is founded on the fact that the team and wagon was owned by one Rennie, who hired the respondent to drive the same and then let the team, wagon and driver

to the appellant at a given consideration per day. But the respondent was the servant of the person under whose direction and control he was at the time he was injured. As was said in *Coughlan v. Cambridge*, 166 Mass. 268, 44 N. E. 218:

"It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become as to that service the servant of such third party. The test is whether, in the particular service which he engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is let or hired."

And this court, in *Wiest v. Coal Creek R. Co.*, 42 Wash. 176, 84 Pac. 725, speaking through Judge Dunbar, said:

"But the law is well established that when one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him."

There is evidence in the record from which the jury could find that the respondent while engaged in hauling the earth was under the direction and control of the appellant. Since, therefore, the court submitted the question to the jury, under instructions to which no complaint was made, their finding is conclusive upon the question.

It is next contended that the rule requiring the master to provide his servant with a safe place in which to work has no application to the facts shown in this record, for the reason that the place of work was constantly changing with reference to its safety, and the servant under the circumstances must be held to have assumed the risks. But the record shows that the master was present on the ground directing the work of the drivers of the teams, of which there were some twelve or more, telling them where to drive and where to drop their loads. Since the master assumed this function, he was bound to take notice of the change in con-

ditions himself and not direct the teams into situations where more than the ordinary dangers were likely to be encountered. The respondent drove down the embankment in the presence of and on the specific order of the appellant, and the appellant cannot escape liability for the injury suffered on the principle that the conditions of the working place did not remain stationary.

The third contention is that the respondent assumed the risk of injury from driving down the embankment, but we think this was a question for the jury. True, the slope was steep, and was obvious to the respondent, but the order of the master directing him to drive thereover contained the implied assurance that it was a reasonably safe thing to do, and the mistake in judgment is the mistake of the master, unless the danger was so plain and apparent that there could be no two opinions concerning it, and whether or not it was so was for the jury. *Anustasakas v. International Contract Co.*, 57 Wash. 453, 107 Pac. 342; *Johnson v. Collier*, 54 Wash. 478, 103 Pac. 818; *Hilgar v. Walla Walla*, 50 Wash. 470, 97 Pac. 498, 19 L. R. A. (N. S.) 367; *Parr v. Spokane*, 67 Wash. 164, 121 Pac. 453; *Fueston v. Langan*, 67 Wash. 212, 121 Pac. 55; *Knudsen v. Moe Brothers*, 66 Wash. 118, 119 Pac. 27.

Further contentions on this branch of the case are made to the effect that the injury to the respondent was caused by a defect in the wagon which he was driving, that the place over which he was directed to drive was reasonably safe, and that the respondent was guilty of contributory negligence because of the manner in which he handled the team and wagon. But on each of these questions the evidence was conflicting, and the court submitted them to the jury. This concludes the inquiry in this court.

The court in the course of the evidence allowed certain expert witnesses to give their opinion as to whether or not the grade over which the respondent was directed to drive

11—74 WASH.

was reasonably safe for that purpose. The appellant objected to the evidence when offered by the respondent, although he afterwards availed himself of the court's ruling and introduced evidence on his own behalf of the same character. In this court it is complained that the court erred in admitting such evidence, but we think the complaint unfounded. The line of demarkation between matters that fall within the common knowledge of mankind and matters that are the subject of special and peculiar knowledge cannot from the nature of things be accurately drawn; the one of necessity shades into the other, and even though the extremes of the opposing rules be definitely marked and error predicated thereon easy of determination, the trial court must have something of discretion whether he will or will not admit opinion where the line is approached. There are places, of course, over which a person of common understanding would know whether or not it was reasonably safe to drive a wagon loaded with earth, but there must be many such which would take a person of special experience and knowledge to say whether the act would be safe or unsafe. The case at bar seems to us to be such a case, and we think no reversible error was committed in admitting the testimony.

A witness, an engineer, was permitted to testify to the grade of the slope as it existed at a period before the trial but subsequent to the time the respondent was injured and when it was concededly not in the same condition it was at the time of the injury. This is thought to be error, but the evidence by comparison with other known data enabled the jury in some degree to determine the grade of the slope at the time of the injury. This rendered it admissible.

Finally, the appellant complains of the excessiveness of the verdict, but we see no reason to interfere with the conclusion of the jury in that regard.

The judgment is affirmed.

MAIN, ELLIS, and MORRIS, JJ., concur.