[No. 15155.  Department Two.  May 28, 1919.]

# W. S. WALTERS, *Respondent*, v. NICK SIEVERS *et al.*, *Appellants*.[1]

TRIAL (134, 143)—VERDICT—CONSTRUCTION AND OPERATION. In an action for personal injuries received when an employee, pursuant to a command, removed a halter from a vicious cow, a general verdict for plaintiff, together with a special finding that he was injured as he claims, amounts to a finding that he removed the halter pursuant to orders.

MASTER AND SERVANT (102, 161) — RISKS ASSUMED — COMPLIANCE WITH COMMANDS. Whether a farm hand, employed to milk and care for cows, assumed the risks in removing a halter from a cow known by him to be vicious, is a question for the jury, where there was evidence that he did so under protest in the presence and at the command of the employer; the question being whether he acted as a reasonably prudent person.

CHADWICK, C. J., and MOUNT, J., dissent.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered October 4, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Adams & Naef*, for appellants.

*G. E. Lovell*, for respondent.

FULLERTON, J.—The respondent brought this action against the appellants to recover in damages for personal injuries received from a bunt of a "muley" or dehorned cow.

The evidence, over which there is no dispute, discloses that the appellants are farmers, engaged in conducting a large farm on which they keep the domestic animals usual in such cases. The respondent was employed by the appellants to care for the animals, a part of his duty being to milk the cows. The

[1]Reported in 181 Pac. 853.

cow causing the injury was one of those he was required to milk. This cow had become fresh about a month before the injury, and was kept in a stall in a stable, to the manger of which stall she was fastened with a halter and chain. From the time of becoming fresh to the time of the injury, the cow was not turned out of the stall, but was fed and watered while therein by the respondent. She had a propensity to kick when being milked, and to prevent or check this, the respondent fastened a strap around her body immediately in front of her udder. The strap was not removed from the cow between milking times, and the evidence is silent as to whether it was even loosened between these intervals.

The evidence concerning the transactions at the time of the injury is widely divergent. The respondent testified that, on the evening of the injury, after the cow had been milked, he returned to the stable and found the cow bellowing and pawing and striking with her front feet; that he called to one of the appellants, who came into the stable and looked at the cow; that the appellant, after looking at her for a moment, told him to remove the halter and turn her loose and not try to milk her any longer; that he objected to going into the stall while the cow was in her enraged condition, but was assured by the appellant that she would not harm him; that he went into the stall on receiving that assurance, and was attempting to remove the halter when the cow lunged at him, catching his leg between her head and the manger and causing the injury for which he sues. He further testified that the cow was vicious and dangerous, and that he had, at various times, protested to the appellants against milking her because of her disposition, but was told each time to milk her a little longer, when she would be turned out to pasture.

The particular appellant to whom the respondent referred testified that he was called into the stable for an entirely different purpose than that stated by the respondent; that another cow, which had recently calved, was in the stable, whose udder was so swollen and sore that she would not nurse her calf, and that he was called in to advise some form of relief for her. He further testified that the cow of which the respondent complains was quiet when he entered the stable; that he entered her stall for the purpose of removing the strap from her body, intending to use it on the other cow; that the cow turned her heels towards him, causing him to "jump back," when the respondent told him to stay out of the stall, as he was like a stranger there, and proceeded to remove the strap himself, when he was bunted, as he testified. He denied that the cow was vicious or dangerous, or that the respondent had ever complained to him that she was so. Others of the appellants also testified to the disposition of the cow, stating that she was neither vicious nor dangerous, and that no complaints had been made to them by the respondent concerning her disposition.

The jury returned a general verdict, finding in favor of the respondent in the sum of $181. They also returned the following special verdict:

"We, the jury, duly empanelled and sworn to try and determine the special questions of fact in the above-entitled cause submitted to us, and to render a special verdict therein, do find, in answer to the special interrogatories submitted to us, as follows, to-wit:—

"INTERROGATORY 1:—Was the cow in question vicious or dangerous? And, if so, did Nick Sievers or any of the defendants know that fact? (Answer fully)

"ANSWER:—Yes.

"INTERROGATORY 2:—Did the plaintiff remove a strap from the cow in question? And, if so, was he com-

manded or directed to do so by one of the defendants, or did he do so voluntarily, of his own free will and accord? (Answer fully)

"ANSWER:—No. No; he was not commanded to do so.

"INTERROGATORY 3:—Was plaintiff injured as he claims? And, if so, do you find that he is entitled to recover in this action?

"ANSWER:—Yes.

"If so, how much is he entitled to recover on account of expenses for medical attendance, if anything?

"ANSWER:—$31.

"If so, how much, if anything, is he entitled to recover on account of loss of earnings?

"ANSWER:—3 months salary at 50 per month, $150.

"If so, how much should he recover, if anything, because of pain and physical suffering?

"ANSWER:—None.

"If so, has plaintiff suffered injuries of a permanent character? And how much, if anything, do you award him on this ground?

"ANSWER:—None.

"Dated this 20 day of June, 1918.

                    "J. C. Koch, Foreman."

At the close of the respondent's case in chief, the appellants moved for a dismissal of his action on the ground of insufficiency of the evidence, and after the return of the verdict and before judgment was entered thereon, moved for judgment notwithstanding the verdicts, and, in the alternative, for a new trial. These motions the trial court overruled, and the assignments of error on this appeal are based on the rulings of the court denying the motions.

In this court the appellants do not argue their assignments of error separately. It is contended, or, if not contended, assumed, that the answer of the jury to the second interrogatory negatives the respondent's contention that he was directed by the appellant, whom

he called to the stable at the time of the injury, to
remove the halter from the cow and turn her loose,
and argue that this finding, taken with the respond-
ent's testimony to the effect that he knew the cow was
vicious and dangerous, precludes a recovery by him.
If the contention with reference to the answer has
foundation in fact, there is much force in the argu-
ment. It is the general rule, undoubtedly, although
perhaps not sustained by all of the cases, that one
employed by an owner to care for a vicious and dan-
gerous animal which he knows to be such, cannot re-
cover from the owner for an injury received while in
the exercise of such care, even though the animal be
of a species that is domestic and ordinarily docile.
But we cannot thus interpret the jury's findings. It
will be remembered that the witnesses were widely
divergent as to the occurrences at the time of the
injury. Both the appellant and the respondent tes-
tify that the cow had a halter on her head, with which
she was tied to the manger, and that she had a strap
around her body, placed thereon to prevent kicking
while she was being milked. The respondent's version
of the transaction was that he was directed to remove
the halter from the cow's head and turn her loose, and
emphatically denied that he was directed to remove
the strap which was around her body. The appellant
witness' version was that the removal of the strap
from around the cow's body was the object sought to
be accomplished, and that nothing was said about re-
moving, and no attempt was made to remove, the
halter. An inspection of the interrogatory will dis-
close that the jury were asked concerning the removal
of the strap, not the removal of the halter, and that
their answer is plainly in accord with the evidence
concerning the strap. They were not required to nor

did they answer specially with reference to the fact whether the respondent was directed to remove the halter.

The jury, therefore, found with the respondent's version of the transaction; that is, they found that the respondent was directed to remove the halter, not the strap, and that he was directed so to do by the appellant, whom he called into the stable. This they did, not only by their general verdict in favor of the respondent, but also by their special verdict in answer to the third interrogatory, where they found that the respondent was "injured as he claims" and "is entitled to recover in this action."

The question for determination, as we view it, then is, Can an employee, employed by an owner to care for an animal known by the employee to be vicious and dangerous, recover for an injury received by him while performing an act in the care of such animal which is performed under the immediate supervision and direction of the owner? The answer to this question, it is clear, must depend upon the facts of the particular case. A servant cannot recover from the master for an injury received in the performance of an act, although directed by the master, if the act directed be one which no reasonably prudent person, having regard for his own safety, would undertake; or, to state the proposition in another way, where the dangers of performance are so apparent that there can be no room for two opinions concerning it. On the other hand, a servant may recover for an injury received in the performance of an act directed by the master, even if the servant has some knowledge of the dangers of performance, if he acts with that degree of prudence which an ordinarily prudent man would exercise under the circumstances. This latter

rule is founded on plain principles of justice. .The master and servant are not altogether upon an equal footing. It is the right of the master to direct his servant, and the primary duty of the servant is to obey. The master ordinarily has superior knowledge of the facts and conditions, and the servant has a right to assume that the master will not expose him to unnecessary perils. Hence, if there is room for two opinions concerning the dangers of the particular act directed, it is for the jury to say whether the servant acted with that degree of prudence which will permit a recovery when injury ensues, or whether the act was such that no reasonably prudent person would undertake it, regardless of the assurances that were given him.

In the present instance, we think the question of the appellants' liability was properly submitted to the jury. The animal the respondent was employed to tend was not one belonging to a species wild and ferocious by nature; one which it could reasonably be supposed he was employed to care for because of his expert knowledge or special fitness for the purpose. On the contrary, the animal was an ordinary domestic animal of a species usually mild and docile. While he had learned in the course of his employment that the particular animal was not of that docile character usual in animals of this class, yet he had milked and otherwise tended her for some weeks without being injured by her, and we think it too much to say that, as a matter of law, he assumed the risk of injury when, in obedience to the direction of the owner, he undertook to remove the halter with which she was tied at the time in question.

The judgment is affirmed.

HOLCOMB and PARKER, JJ., concur.

MOUNT, J. (dissenting)—The character and disposition of the animal was apparent, and for that reason the respondent assumed the risk. I therefore dissent.

CHADWICK, C. J., concurs with MOUNT, J.