[No. 18070.   Department Two.   January 25, 1924.]

H. R. LONG, *Respondent*, v. G. F. SHIRROD, *Appellant*.[1]

EVIDENCE (184)—CONCLUSION OF WITNESS. In an employee's action for the negligence of a foreman, a question as to "who employed the man" is not objectionable as calling for a conclusion.

MASTER AND SERVANT (119)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—OBEDIENCE TO ORDERS. In an employee's action for injuries sustained in obeying orders of a vice-principal to ride a binder down hill, it was not contributory negligence to obey the order.

SAME (102)—ASSUMPTION OF RISK—COMPLIANCE WITH COMMANDS. In such a case, there is no assumption of risk from the fact that it was obvious that the hill was too steep for safety.

SAME (77)—FELLOW SERVANTS—VICE-PRINCIPALS—DELEGATION OF AUTHORITY. One having instructions to oversee a farm and go ahead with the work is a vice-principal and not a fellow servant of a farm hand ordered to do whatever the foreman said.

EVIDENCE (184)—OPINION EVIDENCE—CONCLUSIONS OF WITNESS. A question as to whether witness, who suggested taking a binder

[1]Reported in 222 Pac. 482.

down a steep hill, did not suppose that it would be badly damaged, is not objectionable as calling for a conclusion, where he had already testified that he thought there was a chance to save it thereby.

RELEASE (3)—FRAUD—MENTAL CAPACITY—EVIDENCE—ADMISSIBIL-ITY. Upon an issue as to the mental capacity of an injured employee to sign a release, evidence in rebuttal is admissible as to the administering of opiates to him, at and before the time that the purported release was signed.

EVIDENCE (213)—EXAMINATION OF EXPERTS—HYPOTHETICAL QUES-TIONS. In such a case, hypothetical questions propounded to physicians, relating to plaintiff's continuous condition and use of opiates on days other than the day on which the release was signed, are admissible where he was during practically all the time kept under the influence of opiates.

Appeal from a judgment of the superior court for Whitman county, Miller, J., entered November 2, 1922, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in harvesting grain. Affirmed.

*M. S. Jamar* and *Hanna, Miller & Hanna,* for appellant.

MITCHELL, J.—The defendant was a wheat grower in Whitman county. The plaintiff, an employee during the harvest season, was injured while engaged in moving a binder in a wheat field. He brought suit and recovered judgment on the verdict of a jury. The defendant has appealed.

Oliver Bennett was the superintendent or foreman of the ranch. When respondent was employed he was told "to do what Bennett said." He was employed to shock wheat. He knew nothing about the kind of binder in use on the farm, "never ran one nor done nothing about them." He and others with the foreman were engaged in shocking. One Bill Carson, who was running the binder, got it into difficulty on a hillside so steep that the horses couldn't move it. He called on Bennett for help. Bennett took the horses from the

binder. They discussed the plan of saving the machine by "easing it down the hill." Both of them thought it would be dangerous. Bennett testified, "Well, I told Carson we had better be careful and let the binder go— take care of ourselves and let it go," but that Carson said: "We will try and save it." At his request Bennett then called the respondent and another shocker from their work and ordered the respondent to get on the binder to ride it down the hill so as to keep it from tipping over. Respondent asked them if there would be any danger in doing so, and instead of advising him of their judgment and fears, Bennett replied, "No, it will go down easy." The respondent obeyed the order of the foreman. The brakes holding the machine were released and it soon got beyond the control of the men and gained such momentum going down the hill that the respondent was thrown off and severely injured.

The defenses to the suit were a denial of negligence and pleas of contributory negligence, assumption of risk, the negligence of fellow servants, and a written release of any cause of action in consideration of $200 paid by the appellant. In reply to the alleged release it was alleged that, at the time it was signed, the respondent's mind was so enfeebled by opiates, shock and pain he was unable to make a contract and that the minds of the parties never met.

The first assignment relates to the overruling of appellant's objection to the question propounded to Bennett, "Who had charge of the men doing the shocking?" The objection was that it called for a conclusion, but we do not think so. It related to a question of fact as to who, if anyone, had superintendency over the respondent.

The motion for a nonsuit was properly denied. There was no contributory negligence shown, certainly not as a matter of law. Bennett testified that the appellant

employed him "to take charge of the place and run it and oversee it and to go ahead with the work." The respondent was told at the time he was employed to do what Bennett told him to do. That is, Bennett was a vice-principal. In *Magnuson v. MacAdam*, 77 Wash. 289, 137 Pac. 485, quoting from an earlier case of this court it was said:

" 'As an employee, it was appellant's duty to obey the foreman's order, unless they were so manifestly dangerous that a prudent man in the exercise of due caution would refuse to obey. . . . Ordinarily a servant yields his judgment to the superior judgment and discretion of the master. If he does, and is injured by reason of his obedience to the master's orders, it will ordinarily become a question for determination by the jury, in such an action as this, whether the danger of obeying the order was so imminent and hazardous as to charge the servant with contributory negligence and preclude him from recovering damages.' "

Nor was there, as a matter of law, any assumption of risk. In the case of *Christiansen v. McLellan*, 74 Wash. 318, 133 Pac. 434, we said:

"The third contention is that the respondent assumed the risk of injury from driving down the embankment, but we think this was a question for the jury. True, the slope was steep, and was obvious to the respondent, but the order of the master directing him to drive thereover contained the implied assurance that it was a reasonably safe thing to do, and the mistake in judgment is the mistake of the master, unless the danger was so plain and apparent that there could be no two opinions concerning it, and whether or not it was so was for the jury."

Nor does the doctrine of fellow servant apply. The relation between these parties was that of servant and master, the latter acting through one to whom he had delegated his authority. The master had given the foreman instructions to oversee the farm and go ahead

with the work, and the foreman ordered the servant to do certain work. *Allend v. Spokane Falls & N. R. Co.*, 21 Wash. 324, 58 Pac. 244; *Jancko v. West Coast Mfg. & Inv. Co.*, 40 Wash. 230, 82 Pac. 284; *Jancko v. West Coast Mfg. & Inv. Co.*, 34 Wash. 556, 76 Pac. 78.

The cases relied on by appellant are not applicable. *Swanson v. Gordon*, 64 Wash. 27, 116 Pac. 470, was one wherein, as the opinion states, the plaintiff was a man of experience at the work, having himself been a foreman, and that the accident occurred because of the omission of a fellow servant. In *Hanson v. Shipley*, 71 Wash. 632, 129 Pac. 377, the plaintiff was experienced in the work he was doing at the time he was injured. In *Beck v. International Harvester Co.*, 85 Wash. 413, 148 Pac. 35, the men were engaged in unloading machinery without the immediate supervision or direction of a superintendent or representative of the master.

Objection was made that the conclusion of the witness was called for in a question to Carson, if he didn't figure that the machine would be badly damaged in attempting to take it down the hill the way they proposed. He had already testified without objection to the effect that there was the possibility of a chance to save it, and manifestly the question objected to was a fair one to ascertain his judgment or knowledge of danger in the undertaking.

It is assigned that error was committed in overruling objections to questions to the respondent in rebuttal as to whether or not he remembered signing the instrument constituting the alleged release, which had already been introduced in evidence by the appellant, and in overruling objections to questions proposed to respondent's witnesses in rebuttal about the administering of opiates to him while under medical care at and before the purported release was signed. The argument is that the reply contained no denial of the

signing of the instrument, that it alleged only a legal conclusion, and did not set up any claim of fraud practiced by the defendant in procuring the release. The language of the reply was as follows:

"That at the time of signing the release set forth in defendant's fourth affirmative defense, plaintiff's mind was so enfeebled by opiates, shock and pain that he was unable to enter into contractoral relations or make a valid contract, and that the minds of the parties never met."

Obviously the defense was mental incapacity to make a contract of release. A release, like any other contract, may be avoided on account of mental incapacity of the one charged with giving it. *Union Pac. R. Co. v. Harris,* 158 U. S. 326, 39 L. Ed. 1003. It may result from physical injury, nervous shock, the use of opiates, or physical or mental pain. 34 Cyc. 1055. The evidence objected to was properly received.

Certain hypothetical questions propounded to physicians, called as witnesses on behalf of the respondent, were objected to because the questions embraced the condition of the respondent and the administering of opiates on days other than the one on which the release was signed. But we think the inquiry entirely proper. The respondent was severely injured in the accident. One of his legs had to be finally amputated. He was confined in the hospital for a number of weeks, not being discharged therefrom until after the date of the release. During practically all the time he was in the hospital he was kept under the influence of opiates to relieve his pain, and the questions objected to that comprehend his continuous condition and treatment were quite proper as bearing on his mental condition at the time he signed the instrument.

An adverse ruling on appellant's motion for a directed verdict is assigned as error. We are satisfied,

however, that the case was one for the jury to determine under instructions from the court.

Other than a motion for a new trial, which merits no distinctive consideration, all the other assignments of error relate to instructions given or to the refusal of the court to give certain ones requested by the appellant. Upon consideration of such instructions, together with the facts and the law applicable to those facts under the pleadings, we are satisfied there are no just grounds for complaint in these assignments. The instructions given were clear and comprehensive and fully covered all the issues made by the parties whether general or special, and the evidence thereon, with fairness to both sides. The instructions requested and refused were either duplications in effect of what was given, or not proper statements of the law applicable to the case.

Affirmed.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.