[No. 24986.   Department One.   September 10, 1934.]

OSCAR JONES, *Appellant,* v. HENRY C. BAKER,
*Respondent.*[1]

*G. S. Bond* and *E. W. Benson,* for appellant.
*Frank B. Sharpstein,* for respondent.

MAIN, J.—This action was brought to recover damages for personal injuries. The verdict of the jury was for the plaintiff in the sum of fifteen hundred dollars. The defendant moved for judgment notwithstanding the verdict, and this motion was sustained. From the judgment dismissing the action, the plaintiff appeals.

The facts may be summarized as follows: The respondent, Henry C. Baker, was the owner of a large apple orchard in Walla Walla county. One Ellis Taylor had been employed by him for a number of years as

[1]Reported in 35 P. (2d) 1103.

superintendent and foreman upon the ranch. Taylor, with his family, resided in the dwelling house thereon.

Sometime prior to November 14, 1931, Taylor desired to construct an addition to the chicken house and obtained permission from the respondent to do so. The lumber was to be paid for by Taylor. The respondent cooperated in the matter only to the extent of giving his permission that the addition could be constructed. He had no interest in the chickens. In doing the work, it was partly done out of hours by Taylor, and partly during working hours. One or two of the men employed upon the ranch at times assisted, and one of them hauled the lumber.

On the date mentioned, the appellant was assisting Taylor in the construction of the addition to the chicken house. As appears from the appellant's testimony, he went to the shop not far distant and got a drawing knife for the purpose of shaving off the edge of a board so that it would fit into a place in the structure. Taylor, as preparatory to the shaving off of the edge of the board, placed two empty apple boxes on their end on the ground and set the board on its edge on top of these, the board being an inch thick and approximately twelve inches wide.

After this was arranged, as appellant says: "Mr. Taylor handed me the drawing knife and told me to try my luck with that." Taylor held the board, and the respondent used the drawing knife, shaving down the edge of the board for a period of two or three minutes. During this time, the apple boxes were shaking, and it made the operation difficult. After about one-half of the shaving had been done, appellant says: "As I started to come back this way, I had been shaving, and as I started to come back, the board went to one side and the knife slipped into my knee."

As a result of the injury, the appellant did not work

for a period of about three weeks. While he had been employed upon the farm, he lived as a member of the Taylor family, but slept in the bunkhouse. Aside from the first few days of the three weeks' period when he was not working, he assisted Mrs. Taylor in the kitchen. Taylor's version of the manner of the happening of the accident is entirely different, but for the purposes of this case we accept the appellant's statement as to the manner in which it happened. As already indicated, it is for the injury to the knee that recovery was sought.

The first question is whether the respondent had furnished the appellant a safe place in which to work while he was using the drawing knife. In considering this question, it will be assumed, but not decided, that Taylor bore the same relation to the respondent while he was constructing the addition to the chicken house as when he was performing the other activities for which he was employed.

It is a settled rule that it is the duty of the master to furnish his servant a reasonably safe place to work. But there is a corollary to this rule, which qualifies it and which is equally well settled; and that is, where the danger or defect is as much open to the knowledge of the servant as the master, then the servant cannot recover for an injury, because he, having knowledge of and appreciating the danger or defect, is either guilty of contributory negligence or has assumed the risk. Where the danger is alike open to the observation of all, the master and servant are upon an equal footing, and the master is not liable for an injury resulting from the dangers of the business. In *Brandon v. Globe Inv. Co.*, 108 Wash. 360, 184 Pac. 325, 10 A. L. R. 286, it is said:

"It is too well settled to need citation of authority that it is the duty of the master to furnish his servant

a reasonably safe place in which to work; but another rule, which qualifies and runs with the one announced and which is equally well settled, is that, where the danger or defect is as much open to the view and knowledge of the servant as of the master, then the servant cannot recover for an injury, because he, having knowledge of and appreciating the danger or defect, either is guilty of contributory negligence or has assumed the risk. It is upon this principle that this case must be decided. In the case of *Griffin v. Ohio & M. R. Co.*, 124 Ind. 326, 24 N. E. 888, it was said:

" 'Where the danger is alike open to the observation of all, both the master and servant are upon an equality; and the master is not liable for an injury resulting from the dangers of the business.'

"At § 346, Beach on Contributory Negligence (3d ed.), it is stated:

" 'Knowledge on the part of the employer, and ignorance on the part of the employee are of the essence of the action; or, in other words, the master must be at fault and know of it, and the servant must be free from fault, and ignorant of his master's fault, if the action is to lie. The authorities all state the rule with these qualifications.' "

The cases of *Jennings v. Tacoma Ry. & Motor Co.*, 7 Wash. 275, 34 Pac. 937, and *Brown v. Tabor Mill Co.*, 22 Wash. 317, 60 Pac. 1126, as well as others that might be cited, are to the same effect.

Where, however, the master has assured the servant that the place is safe, or has directed the specific thing to be done in such a manner as to imply an assurance, the servant will not be held to have assumed the risk. *Christiansen v. McLellan*, 74 Wash. 318, 133 Pac. 434; *Lindquist v. Pacific Coast Coal Co.*, 81 Wash. 73, 142 Pac. 445. In this case, there was no express assurance of the safety of the place, and when Taylor handed the drawing knife to the appellant and told him to try his luck with that, this was not such an order as would imply the safety of the place.

In the case of *Waterman v. Skokomish Timber Co.*, 65 Wash. 234, 118 Pac. 36, the statement of the foreman to the effect, "that is all right, get on" and "get into the boat, Wes, and let's go on," it was held, was not an assurance of safety which would absolve the servant from the assumption of risk otherwise assumed. It was there said:

"An assurance of safety, in order to absolve the servant from the assumption of risk otherwise assumed, must be such that, under the given circumstances, it is reasonably calculated to allay his fears and subordinate his judgment to the superior knowledge of the master. 1 Labatt, Master and Servant, §§ 449-451."

In this case, the danger, by reason of the shaking of the boxes and making it difficult to use the drawing knife, was open and apparent to anyone of common understanding. It is true that the appellant had not, as he says, previously used a drawing knife, but this is not a controlling feature. Attention is called to the fact that he suggested the placing of the board in a vise in the shop, but, if this has any significance, it tends to show his knowledge of the danger in the manner in which the operation was being performed. Taylor's statement to the appellant, when he handed him the drawing knife and told him "to try my luck with that," was not such a statement as would carry an assurance of safety. That statement was no more significant than was what was said in *Waterman v. Skokomish Timber Co., supra,* and on this matter the present case is controlled by the holding in that case.

The case of *Long v. Shirrod,* 128 Wash. 258, 222 Pac. 482, is different, because, there, there was an express assurance of safety, and the case of *Prink v. Longview, Portland & Northern Ry. Co.,* 153 Wash. 300, 279 Pac. 1115, differs from the present one, because, there, there

was a specific direction which carried an implied assurance of safety.

The next question is whether the appellant can recover by reason of Taylor's negligence in permitting the board to tip to one side, with the result that the appellant cut his knee, if Taylor was negligent in that regard. This depends upon whether at the time Taylor was acting in his capacity of vice principal of respondent or a fellow servant of the appellant. Whether the relation be that of vice principal or that of fellow servant, depends upon the character of the service being performed at the time. If the character of the work was such that general oversight by an independent agency could be dispensed with without depriving the injured servant of a substantial right, then the fellow servant relation would exist.

In *Desjardins v. St. Paul & Tacoma Lumber Co.*, 54 Wash. 278, 102 Pac. 1034, the foreman removed his hands from a post which was being set in an upright position and it toppled over and fell, and an employee sustained an injury. It was there held that the foreman's negligence was that of a fellow servant.

In the case of *Swanson v. Gordon*, 64 Wash. 27, 116 Pac. 470, the foreman pulled a mast a few inches beyond its proper place and it toppled over carrying a servant with it, and it was there held that the act of the foreman was an omission of fellow service and no recovery could be had. In that case, it was said:

"It has never been held that, because two or more men are engaged in a like undertaking, the duty of superintendence follows as a legal obligation. To put the mere details of a work under the burden of independent superintendence would necessitate the employment of one man to oversee every other, no matter what the character of the work. It is generally held that the question of the right of superintendence is to be resolved by reference to the facts of the given case.

. . . The workmen were employed in a common service. The accident occurred because of an omission of fellow service, and not from lack of superintendence. Without reviewing the cases relied on, it will be seen by reference that each of them turned on the fact that the character of the work was such that general oversight by an independent agency could not be dispensed with without depriving the injured servant of a substantial right.''

The work which Taylor and the appellant were doing at the time the latter was injured was clearly a common service, and this case falls directly within the rule of the two cases last cited. In other words, Taylor was not acting as a vice principal at the time, but as a fellow servant.

The questions in the case are purely those of law, and the record furnishes evidence of no facts or reasonable inference from facts which would sustain a recovery.

The judgment will be affirmed.

BEALS, C. J., MITCHELL, and STEINERT, JJ., concur.

TOLMAN, J., dissents.