[No. 33028. Department Two. December 30, 1954.]

JOHN POLING, JR., *Respondent,* v. CHARBONNEAU PACKING CORPORATION, *Appellant.*[1]

[1]Reported in 278 P. (2d) 375.

*Olson & Palmer* and *J. W. McArdle,* for appellant.

*Tonkoff, Holst & Hopp,* for respondent.

HILL, J.—This is an appeal from a judgment entered on a verdict for the plaintiff in an action for personal injuries sustained while he was operating a tractor for the defendant. The issues before us relate to negligence, assumption of risk, and contributory negligence, all of which were, we assume, submitted to the jury by proper instructions. The same issues were presented to the trial court by appropriate motions during the trial, and finally by a motion for a judgment notwithstanding the verdict. The trial court determined that all of them were questions for the jury, and the jury determined them adversely to the defendant, appellant here.

Appellant can prevail on this appeal only if it can be said as a matter of law that there is no evidence or reasonable inference therefrom to sustain the verdict on those issues. *Williams v. Hofer,* 30 Wn. (2d) 253, 191 P. (2d) 306 (1948).

The jury could have found the facts to be as hereinafter stated. John Poling, Jr., had a fifth-grade education and was twenty-three years old at the time of his injury. He had worked in the Yakima valley as a laborer in fruit orchards since 1945 and had had about fifteen hours' experience driving a tractor before his employment in early February of 1953 by the Charbonneau Packing Corporation. Thereafter until his injury he did various kinds of work on a fruit ranch belonging to that corporation, including some jobs which involved operating a tractor (for about

two and a half weeks). On April 17, 1953, the day before the accident, Poling and Charles Roche, who managed that particular ranch, were planting trees in an orchard and were utilizing the tractor and a trailer to haul the young trees and to haul water and dirt for the tree planting. At quitting time that day, the trailer was backed against what is referred to in the testimony as a "ditch bank" and was loaded with dirt, and they left it there overnight.

The trailer was attached to the tractor by means of a trailer-hitch assembly. This assembly consisted of a crossbar behind, parallel to, and lower than the rear axle; two lateral bars, the rear end of one attached to the left end of the crossbar and the front end bolted to the left side of the differential housing under the axle, the other similarly attached to the right side; and two bars forming an inverted V, the apex of which was connected to the top of the differential housing and the sides of which sloped down to the crossbar first described and were attached thereto near each end. The hitch itself was centered on the crossbar and was used to connect the tongue of the trailer to the assembly. The tractor seat was located above and in front of the differential housing. A utility chain that was usually carried on the tractor was wrapped over the protruding connection of the inverted V-shaped bar at the top of the housing.

On the morning of April 18, 1953, when Roche and Poling returned to the tractor and trailer, they found that the trailer had become "bogged" down, and when an attempt was made to move it forward the wheels of the tractor spun and became buried five or six inches in the dirt. Several attempts were made to pull the trailer straight ahead, but without success. Poling then suggested that they unhitch the tractor, move it, and then hitch it at right angles to the trailer tongue in an attempt to pull the trailer out from the side. Roche removed the pin from the trailer hitch and Poling started to move the tractor ahead. While doing this, he heard the chain fall from the differential housing where it had been resting, and saw it accidentally hook onto the trailer tongue. Continuing forward, he saw the

chain become taut and asked Roche to unhook it; however, Roche told him to "go ahead and try it ahead." In response to this order, Poling drove the tractor forward. As he did so, the front end "rared up" and the tractor tipped over backwards, pinning him under it and causing his injuries.

Roche, at the time of giving this order, was in a position to see the manner in which the chain was attached to both the trailer and tractor. Although Poling knew that the utility chain was usually carried on top of the differential housing, he did not learn until after the accident that after it slipped one end was still fastened to the tractor at the connection on top of the differential housing, which, of course, was considerably higher than the rear axle. The leverage thus created forced the tractor over backwards when Poling attempted to drive forward.

The first question presented is whether we can say as a matter of law that Roche, appellant's ranch manager, was not negligent when, under the conditions then existing, he told respondent to "go ahead and try it ahead." (Roche denies giving the directions quoted or knowing that the chain had caught on the trailer, but the jury could and did accept Poling's version of what happened.)

Appellant contends that the manager's direction or order was not actionable negligence, and relies on the cases of *Sainis v. Northern Pac. R. Co.*, 87 Wash. 18, 151 Pac. 93 (1915), and *Kosinski v. Hines*, 113 Wash. 132, 193 Pac. 209 (1920). In the *Sainis* case, a heavy rock was to be lifted from a flatcar. The danger was declared by the court to be as apparent to the plaintiff as to the foreman who directed him to lift the rock. The *Kosinski* case involved an injury suffered by the plaintiff while doing the same kind of work he had previously done without injury, with the same five men, *i.e.*, that of lifting heavy channel bars. The court held that negligence was not established, the foreman having ordered six men to do a job that had been done safely by the same six men on previous occasions.

In cases which involve carrying or lifting heavy objects, it may well be true that the employee is the best judge

of his own physical strength and lifting capacity, and the foreman may not be negligent in directing an employee to lift an object too heavy for him. However, in a case involving facts such as those in the case at bar, we believe the issue of negligence was properly submitted to the jury. A more apropos series of cases would be *Christiansen v. McLellan,* 74 Wash. 318, 133 Pac. 434 (1913); *Lindquist v. Pacific Coast Coal Co.,* 81 Wash. 73, 142 Pac. 445 (1914); *Walters v. Sievers,* 107 Wash. 221, 181 Pac. 853 (1919); *Long v. Shirrod,* 128 Wash. 258, 222 Pac. 482 (1924); *Prink v. Longview, Portland & Northern R. Co.,* 153 Wash. 300, 279 Pac. 1115 (1929). While the discussion in those cases is concerned primarily with the question of assumption of risk, it is necessarily recognized therein that an employer can be negligent in giving an order to an employee under conditions comparable to those existing in this case. Roche's negligence, and hence that of appellant, represented a question for the jury.

The second contention of appellant is that respondent assumed the risk because (1) he assumed the ordinary dangers incident to driving a tractor, and (2) the chain hook-up, as it existed at the time of the accident, was open and obvious, and brought into play the natural forces of leverage.

The facts do not indicate that this was an ordinary danger incident to driving a tractor. There are two answers to the contention that this accident brought into play the natural forces of leverage and that the chain hook-up was open and obvious and the result inevitable. Taking the inferences from the facts most favorable to the respondent, as we are bound to do in considering a motion for a judgment notwithstanding the verdict (*Olsen v. White,* 37 Wn. (2d) 62, 221 P. (2d) 542 (1950)), we cannot say that respondent knew that the chain was attached to the connection on top of the differential housing. Not knowing this, he would not be aware of the risk involved. He testified, moreover, that even had he known where the chain was hooked, he would not have known that an attempt to pull the loaded trailer

when so connected would overturn the tractor. It is clear that respondent was neither a physicist nor an experienced tractor operator. It is significant that, in the assumption-of-risk cases relied upon by appellant (*Smith v. Hecla Mining Co.,* 38 Wash. 454, 80 Pac. 779 (1905); *Props v. Washington Pulley & Mfg. Co.,* 61 Wash. 8, 111 Pac. 888 (1910); *Cummins v. Dufault,* 18 Wn. (2d) 274, 139 P. (2d) 308 (1943)), the plaintiffs either knew of the danger that occasioned their injuries or, as in the *Props* case, had an extensive experience which charged them with such knowledge. In none of those cases was the plaintiff acting in response to a direct and immediate command from a superior.

We recognize that we are not here concerned with what the respondent knew and appreciated, but rather, unless Roche was aware of some lack of capacity or understanding on the part of respondent, with what an ordinarily prudent person would have known and appreciated under the same or similar circumstances. *Cummins v. Dufault, supra.* But we also recognize that one of the circumstances to be considered is that respondent, as appellant's employee, was confronted with a direct and immediate order from appellant's manager. In *Walters v. Sievers, supra,* we said (p. 226):

"A servant cannot recover from the master for an injury received in the performance of an act, although directed by the master, if the act directed be one which no reasonably prudent person, having regard for his own safety, would undertake; or, to state the proposition in another way, where the dangers of performance are so apparent that there can be no room for two opinions concerning it. On the other hand, a servant may recover for an injury received in the performance of an act directed by the master, even if the servant has some knowledge of the dangers of performance, if he acts with that degree of prudence which an ordinarily prudent man would exercise under the circumstances. This latter rule is founded on plain principles of justice. The master and servant are not altogether upon an equal footing. It is the right of the master to direct his servant, and the primary duty of the servant is to obey. The master ordinarily has superior knowledge of the facts and conditions, and the servant has a right to assume that

the master will not expose him to unnecessary perils. Hence, if there is room for two opinions concerning the dangers of the particular act directed, it is for the jury to say whether the servant acted with that degree of prudence which will permit a recovery when injury ensues, or whether the act was such that no reasonably prudent person would undertake it, regardless of the assurances that were given him."

For another excellent statement, see *Christiansen v. Mc-Lellan, supra.*

We are unable to say as a matter of law that a reasonably prudent and cautious employee should have disobeyed Roche's order and refused to move the tractor forward under the circumstances. The trial court acted properly in submitting the question of assumption of risk to the jury.

Appellant's last contention is that respondent was guilty of contributory negligence as a matter of law, (1) for not looking to see where the chain was attached and (2) for not stepping on the clutch pedal when the tractor started to raise up and turn over backwards.

We are unable to agree that, under the facts in this case, the respondent had a duty to look to see where the chain was attached. As we pointed out in the *Walters* case, *supra,* the master ordinarily has superior knowledge of the facts and conditions, and the servant has a right to assume that the master will not expose him to unnecessary peril. The case of *Long v. Shirrod, supra,* presented the same three defenses (denial of negligence, assumption of risk, and contributory negligence) that are urged on this appeal. That case seems to us decisive of all three issues raised by appellant here. On the issue of contributory negligence, we there quoted from the earlier case of *Magnuson v. Mac-Adam,* 77 Wash. 289, 137 Pac. 485 (1914), which in turn quoted from an earlier case, as follows (p. 261):

" ' "As an employee, it was appellant's duty to obey the foreman's order, unless they were so manifestly dangerous that a prudent man in the exercise of due caution would refuse to obey. . . . Ordinarily a servant yields his judgment to the superior judgment and discretion of the master. If he does, and is injured by reason of his obedience

to the master's orders, it will ordinarily become a question for determination by the jury, in such an action as this, whether the danger of obeying the order was so imminent and hazardous as to charge the servant with contributory negligence and preclude him from recovering damages." ' "

■ We are likewise unable to agree that the failure to step on the clutch pedal when the tractor started to "rare up" can be held to be contributory negligence as a matter of law. If, as appellant seems to contend, respondent stepped on the brake pedal instead of the clutch pedal, it may have been because he was, as he testified, off balance. In any event, he was confronted with a sudden peril requiring instinctive rather than reasoned action. This court, in *Dupea v. Seattle*, 20 Wn. (2d) 285, 290, 147 P. (2d) 272 (1944), recognized that:

"When one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection." 1 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), 538, § 668.

The facts in the case at bar bring it within the emergency doctrine. All facets of contributory negligence were for the jury.

Appellant's motions challenging the sufficiency of the evidence were properly denied. The judgment of the trial court is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER. JJ., concur.